## TRUSTEES OF TROY CONFERENCE ACADEMY· *v.* NEHEMIAH NELSON.

*Subscription-paper.    Liability of subscribers.    Consideration.*

N. with other persons, signed a subscription-paper, thereby promising to pay to the *trustees* of Troy Conference Academy, or to their order, the sum of one hundred dollars, for the purpose of enabling them to pay the debts of said Academy; one-half by the first of June, 1844, the remaining half in one year thereafter, provided that the sum of twenty thousand dollars is subscribed by the first of January, 1844; the sum of twenty thousand dollars was subscribed by the first of January, 1844, and N. paid one half of his subscription and then gave notice that he should not pay the remaining half. In an action brought against N., after the expiration of the said year, to recover the remaining half of his subscription, it was held, that the obligation imposed upon and assumed by the trustees of the Academy to see to, and make the application of this money, as directed by the subscribers to this fund, so consummated the contract, that N. could not avoid payment on the ground that there was no consideration for the promise; and that whether the relation each subscriber bears to the other, or to the institution itself is considered, N. is estopped from denying the obligation of his contract.

Troy Academy *v.* Nelson.

The amount of the consideration is unimportant, and it is not necessary in this State, that it should appear upon the face of the contract or agreement, as it may be proved by testimony *aliunde.*

ASSUMPSIT.  The suit was commenced before a justice of the peace, and came to the county court upon appeal.  Plea, general issue, and trial by the court, September term, 1851, of the county court,—PIERPOINT, J., presiding.

On trial, the plaintiffs gave in evidence a subscription paper, in these words :  " We the subscribers agree to pay the sums hereunto " by us subscribed, to the trustees of the Troy Conference Acade-" my or their order, for the purpose of enabling them to pay the " debts of said Academy, as follows, viz : one-half by the first of " June, 1844, and the remaining half in one year thereafter, pro-" vided that the sum of twenty thousand dollars is subscribed by " the first of January, 1844, and we agree to give our notes to the " said trustees for the amount of our subscriptions, payable as " above, on interest from the time when the subscription is filled. " Interest to be due annually."

" West Poultney, June 9th, 1843."

The plaintiffs also introduced evidence, showing a compliance on their part, with the terms and conditions expressed in said paper, and that more than twenty thousand dollars was thereto subscribed prior to the first day of January, 1844.  The defendant subscribed said paper for one hundred dollars, and in the summer of the year 1844, paid to the plaintiff one-half the amount thereof, but at that time denied his liability, and said he would not pay any more, and after the expiration of one year from the time, when said subscriptions were filled up, refused, on request made to him for the purpose by the plaintiffs, to pay the balance of his said subscription, or to give his note therefor.  It was also shown, that the plaintiffs were deeply involved in debt, which rendered said subscription necessary to enable them to make payment, and that they incurred large expenses, and made disbursements in obtaining said subscriptions.

The court decided that there was no sufficient consideration shown for said subscriptions, and upon that ground rendered judgment for the defendant for his costs.  Exceptions by plaintiffs.

*Edgerton & Allen* for plaintiffs.

Troy Academy v. Nelson.

1. The subscription of the defendant is the ordinary case of one made on a condition, to be complied with by the party in whose favor the subscription is made, and such subscription becomes binding when the condition is complied with. *Wm's. College* v. *Danforth*, 12 Pick. 541. *Amherst Acad.* v. *Cowls*, 6 Pick. 427.

2. The defendant, by signing the subscription paper, impliedly requested the plaintiffs to obtain like subscriptions to the amount of twenty thousand dollars, and when plaintiffs had obtained that amount, and in so doing incurred expense, the promise of the defendant became binding upon him, and cannot be avoided upon the ground of want of consideration. *Underhill* v. *Gibson*, 2 N. Hamp. 352. *Hames* v. *Dana*, 12 Mass. 190. *Bryant* v. *Goodnow*, 5 Pick. 228. *Farmington Acad.* v. *Allen*, 14 Mass. 172. *State Treas.* v. *Cross*, 9 Vt. 289. *Stewart* v. *Trustees Hamilton Coll.*, 2 Denio 403. *University of Vt.* v. *Buell*, 2 Vt. 48.

3. In this case a number of persons promise to contribute to a common object which they wish to accomplish, and the promise of each is a good consideration for the promise of the others. Chit. on Cont. page 46, note 1. *Stewart* v. *Trustees Hamilton Coll.*, 2 Denio 403, opinion of Walworth Chancellor. Gilchrist Dig. p. 71, Sec. 5.

*J. W. Thompson* for defendant.

1. The decision of the court was correct. 1. Because it does not appear the defendant was interested in the debt or the payment thereof, or that he was to receive *anything* for subscribing. 2. Neither does it appear plaintiffs were bound to raise $20,000 by the day, or that they agreed *to try.* 3. Neither does it appear plaintiffs incurred *any expense* in consequence of defendant's subscription. In all cases where subscribers to stocks have been held upon adjudication, *to be bound*, the *ground* has been the stocks or shares which the subscribers were to receive, furnished a consideration. In this case, it appears the subscription was to raise funds to pay a debt previously incurred by the donees, which *if any* was a *past* consideration. 11 Mass. 113. 14 Mass. 172. 2 Pick. 579. 6 Pick. 427. 7 J. R. 26. 21 Wend. 139. 2 Denio 403. 1 Compstock 581.

2. The payment of *part* of subscription is not sufficient to render same *valid*, neither should it be allowed to operate as an *estop-*

*pel in pais.*   Because this was done  under a protestation he  was not liable.

3. The subscription was  only a promise *to make a gift* at a future day, which is void.

The opinion of the court was delivered by

ISHAM, J.   This action is brought to  recover the amount of  a subscription made by the defendant  to enable the Troy Academy to pay off its debts.   The  existence of the plaintiffs as a corporation, as set  forth in their declaration is not disputed, and  no suggestions are made by the  defendant that his subscription was obtained by unjust or  improper means, or  that the  trustees of that Institution do not  design in  good faith, to  appropriate the money to the purposes and objects for which it was given.

The only matter of defense to which our attention has been · directed, is the want of a legal  consideration to sustain the promise. It is stated in the  case, that this  Institution was deeply in debt. That a  necessity existed for raising  the sum of $20,000 from among its patrons and friends in order to protect and preserve the property for the purposes and objects for which it was established. And that for the purpose of raising that amount, this subscription paper was circulated, and those  measures adopted by the trustees of that Institution, which were  deemed necessary and  important for the attainment of that object.   As the result of their exertions, we find that the whole  sum was raised that was necessary by  the terms of the  instrument to render it binding on the various subscribers.   It is obvious, that in raising  that amount, there was, among the various subscribers to that fund, a community of interest and feeling, that the Institution should be enabled to prosecute the purpose of general instruction for which it was incorporated.   That the subscription of one for that object, induced and influenced  the exertion and subscription of others, is evident from the consideration that no obligation of payment was intended to have been created thereby,  unless the whole sum of twenty thousand dollars was raised by the 1st of January, 1844.   When the defendant, therefore placed his name to  that subscription, with the sum he appropriated  to that object,  he contracted a  two-fold relation, first, to the Institution  itself, and in the second place to those with  whom he had subscribed for  that object.   In his relation to the Institu-

Troy Academy v. Nelson.

tion, it was an expression of his desire that the object should be accomplished, and if not expressed in form, it was equivalent to an express request, arising from the very nature of the transaction, that such exertions should be made and continued by the trustees, as were necessary for its final accomplishment, and justified those expenses and disbursements on their part, which were made, and were necessary to insure their final success. And in relation to other subscribers, the common object they had in view was to raise that full amount to relieve the Institution from its embarrassment and debts. For this reason an express provision was made that no obligation of payment should arise, unless that full amount was raised by a given time. This gave, to each subscriber, an interest in the subscription of the other. If any were inoperative it affected the entire subscription, for to that extent their common object had failed. If any have paid their subscription, it will be a manifest fraud upon them, if other subscribers are permitted to avoid payment of theirs, for such payment has been made for an object that has failed, and which would have been avoided if they had complied with their promise and subscription, and the Institution is left under the same embarrassment and debts that existed before such payments were made. Whether we consider, therefore, the relation which each subscriber bears to the others, or to the Institution itself, we think that the defendant should be estopped from making such defense, or denying the obligation of his contract, for it operates alike fraudulently upon each.

If the trustees of that Institution could have anticipated such a defense, surely they would not have been to that labor, expense, and disbursement to which they were subjected, in order to obtain the subscriptions. Nor would the co-subscribers have taken their respective obligations upon themselves, only in a reliance upon the good faith of the several subscriptions, and that thereby that amount would be paid, and the Institution be relieved from its embarrassment. We can hardly conceive of a case where the doctrine of estoppel has a more just and equitable application. For it is of the very essence of such estoppel "that a party shall not "be permitted to contradict an act which operates as a fraud on "his part, or as an injury to others, whose conduct has been in-"fluenced thereby." 2 Smith's Lead. Cas. 561, and cases there cited. Nor was it ever designed, in saying that a party may avoid

an improvident contract by showing that no consideration existed therefor, that that principle should ever become an instrument in the hands of one, for the commission of fraud upon others.

But a sufficient consideration we think, is readily found in the case. A legal consideration may consist in loss, damage or inconvenience, sustained by the party to whom the promise is made, or of benefit or advantage to the party promising. The amount of the consideration is unimportant, nor is it necessary, in this State, that it should appear upon the face of the contract or agreement, as it may be proved by testimony *aliunde*. The consideration for this agreement is found in the obligation imposed upon, and assumed by the Trustees of this Academy to see to, and make the application of this money as directed by the subscribers to this fund, so as to enable this Institution to prosecute its duties of public instruction, for which it was incorporated, thus rendering this assumed liability and promise, the consideration of the promise of the other. To create this obligation upon this corporation or its trustees, it was not necessary that the instrument should have been signed by them, for that obligation arises from the acceptance of those subscriptions for that purpose, and which can be enforced at law and in equity. This was so expressly decided in the case of *Patchin* v. *Swift*, 21 Vt. R. 292. The court there say " that the accepting and adopting a written contract by a party, " who has not put his name to it, binds such party equally as if he " had signed such contract." And this must be considered as settled in this State, whatever may have been decided in the case of *Hamilton Coll.* v. *Stewart*, 1 Com. R. 582. If that obligation rests upon the trustees of this Academy, and was created by obtaining and accepting these subscriptions, that it constitutes a sufficient consideration to sustain the promise of the defendant, is clearly sustained by the case of *Amherst Academy* v. *Cowls*, 6 Pick. R. 433. In that case the obligation was given for the support of indigent pious young men, and the consideration upon which it rested was the obligation of the trustees or the corporation to make such application. And this obligation was created not by having signed an agreement of that character, but arose, as in this case, from having accepted the subscription under those provisions. Upon the objection being made, that the agreement was without consideration, the court remark: "That it was *quite sufficient to create*

Troy Academy *v.* Nelson.

" *a consideration, that the payee should have assumed an obligation*
" *in consequence of receiving the note which he was compelled either*
" *at law or equity to perform,* and if by means of his contribution,
" or solemn promise to pay, the body to whom he has pledged his
" word should encounter expense, become under legal obligations,
" or otherwise pursue the intent and purpose of the legislature in
" granting them the charter, this is a sufficient legal consideration
" to support such a promise. In this respect the principles of
" common honesty cannot be at variance with the law of the land."
And upon a review of the authorities upon this subject, the court
further say, "That we do not find that it has ever been decided
" that where there are proper parties to the contract, *and the*
" *promise is capable in law of carrying into effect the purpose for*
" *which the promise was made, and is in fact amenable to law for*
" *negligence or abuse of his trust,* such a contract is void for want
" of consideration." This seems to be now the settled doctrine in
Massachusetts upon subscriptions of this character. In *Dart-
mouth College* v. *Woodard,* 4 Cond. U. S. Rep. 547, Ch. J. MAR-
SHALL, speaking of contributions and subscriptions of this charac-
ter, says, " That the consideration for which they stipulated is the
" perpetual application of the fund to its object in the mode pre-
" scribed by themselves." And upon this ground the case of *Mc-
Auley* v. *Billinger,* 20 John. R. 89, was decided. A different
rule was adopted in the case of *Hamilton College* v. *Stewart,* 1
Comp. R. 582, and yet the principles adopted in that case, when
applied to the rules fully established in this State, will here sus-
tain a recovery on such subscriptions. The action was on a sub-
scription to raise a fund for the use of the College. The first
count was founded on mutual promises, and it was held that no
recovery could be had on that count, for the reason, that the cor-
poration had not executed the agreement and had not undertaken
to appropriate the fund to the purposes designated. If they had
executed the agreement, or if there had been an undertaking
which could have been enforced to appropriate the fund as they
designated, the subscription would have been binding and the con-
sideration sufficient as founded on mutual promises.

That an obligation of that character does rest upon this corpo-
ration and its trustees, and that courts of law and equity will en-
force that obligation, is sustained by the case of *Patchin* v. *Swift,*

to which we have referred. And where that obligation exists, that case is a decided authority, that such subscriptions are legally binding. Their consideration rests upon mutual promises, and this view of the subject was taken by Chancellor Walworth in all the cases arising under the Hamilton College subscriptions.

The second count procceded upon the ground that the subscription furnished evidence of a *request* that the plaintiffs should perform those services necessary to secure the amount of the fund. And the court properly remark, "That if that is the true con-"struction, the right of the plaintiff to the subscription money is "unquestionable." That that is a true construction of this agreement, and that such a request arises out of the very nature of the transaction we have considered. And this view of the subject is taken by Ch. J. NELSON. 2 Denio Rep. 403. In the case of *Patchin* v. *Swift,* the court remark, "That it is well settled, that "a consideration may be inferred from the terms and obvious im-"port of a written contract when it is not distinctly alledged and "set forth in the contract itself as a consideration." If this subscription had been signed by the corporation and contained a stipulation on their part to make the application of the fund as subscribed, or if it contained a request by the defendant for the plaintiffs to continue their exertions until the fund was raised, no one would question the legality or sufficiency of its consideration. And yet, that is the legal effect and operation of the instrument itself. All that, "is to be inferred from the terms and obvious import of this contract."

These principles have in various instances been recognized in New Hampshire, and the promise of each has been held to be the consideration for the promise of the other. *George* v. *Harris,* 4 N. Hamp. R. 533. *Society in Troy* v. *Perry,* 6 N. Hamp. R. 164. Chitty on Cont. 46. n. (1.) The cases in this State have been uniform in giving a legal obligation to such contracts or subscriptions. In the case of *The University of Vermont* v. *Buell,* 2 Vt. R. 48, the cases upon this subject were generally reviewed, and Ch. J. WILLIAMS, in the case of the *State Treasurer* v. *Cross & Day,* 9 Vt. R. 293, speaking of the case in the 2d of Vt. R. observes, "that from that case it appears that such contracts are not "void for want of a consideration." And in both cases a recovery was had on similar subscriptions. We think, therefore, the

defendant is responsible on this subscription, and that a legal consideration exists to sustain it.

The judgment of the county court must therefore be reversed.