## George W. Underwood v. Henry Waldron and others.

*Subscription for public purposes: Consideration.*—Where a subscription is made by which the signers promise to pay the several sums subscribed, for the. purpose of erecting a building for educational purposes, and something has been done, or some liability or duty assumed, in reliance upon the subscription, in order to carry out the object, the promises are binding, and may be enforced, although no pecuniary advantage is to result to the promissors.

But where, by its charter, a college was located at Spring Arbor, and a subscription was entered into for the purpose of erecting a college building therefor at Hillsdale, and it did not appear, by the subscription or otherwise, that it was designed as an inducement to the college to endeavor to obtain legislative authority to remove to Hillsdale, and it could not be lawfully removed without such authority, it was held, that the subscription, being for a purpose not authorized by law, was invalid.

*Pleadings: Declaration.* -- The declaration against one of the subscribers, after setting forth the subscription, averred that the college at Spring Arbor decided not to use the building when completed, and the subscribers afterwards renewed their subscription, and indebtedness was incurred and the building was completed in reliance thereon. It was shown in evidence, that the renewal of the subscriptions and the erection of the building were *for the benefit of a new college to be established at Hillsdale.* This fact not being averred in the declaration, which only showed a subscription for the benefit of a college not located at Hillsdale, it was held, that no recovery could be had thereon.

*Heard July 10th and 11th. Decided December 5th.*

Error to Branch Circuit.

Henry Waldron, Chauncey W. Ferris and Allen Hammond, brought suit against Underwood in assumpsit, the declaration containing two counts, in substance as follows:

*First Count:* For that, on January 26, 1853, the defendant, the plaintiffs, and certain other persons, were desirous of erecting a college building in or near the village of Hillsdale, for the benefit of themselves severally, and the defendant, in consideration thereof, and for the purpose of

12 MICH.—E.

effecting said object, and in consideration that certain persons named did subscribe their names to the following agreement: "We, the subscribers, severally promise to pay the sums set opposite our respective names, to the order of Henry Waldron, Chauncey W. Ferris and Allen Hammond, for the purpose of purchasing land, or erecting a college building in or near the village of Hillsdale, for the use of the Michigan Central College; dated Fayette, January 26, 1853;" and did each set opposite their names, thereto subscribed, certain sums of money specified, and in consideration that certain other persons would subscribe their names to the said agreement, and would set opposite their names certain sums of money, to be paid as therein specified, the defendant did subscribe his name thereto, and promise to pay the plaintiffs $1000 as follows: $250 in four months; $250 in eight months; $250 in twelve months, and $250 in sixteen months; that other subscribers to said instrument, who are named, did subscribe thereto in consideration, among other things, of the defendant's subscription; yet that although the persons so subscribing have paid the amounts by them subscribed; and the plaintiffs have paid out and expended all the moneys paid them, in erecting said college building; and said building has been erected, and a large amount of indebtedness has been incurred on the faith of said subscription in erecting said college building, and plaintiffs have at all times been ready and desirous to use and expend the amount so subscribed by defendant for the purpose of paying such indebtedness; yet the said defendant refuses to pay, &c.

*Second Count:* Sets forth the subscription in the same manner; avers that afterwards, on July 1, 1853, defendant had paid $200 of the amount subscribed by him, and the other subscribers had also paid a large amount, in all $5000, which had been expended in erecting a college building; that the Michigan Central College decided not to use the building when completed, of which the defend-

ant had notice; that afterwards, on January 2, 1854, in consideration that the several other subscribers did then and there renew their said promises and undertakings, "he, the said defendant, undertook, and then and there faithfully promised the said plaintiffs to perform and fulfill the said agreement in writing, in all things on his part and behalf to be fulfilled and performed, and to pay the balance of the aforesaid sums of money, so subscribed by him as aforesaid, at the times aforesaid, to the said plaintiffs." And although other subscribers named have paid the amounts subscribed by them, and plaintiffs have expended all the money so paid them in erecting said college building, and the college building has been erected; and although a large amount of indebtedness has been incurred in erecting the same, and plaintiffs have at all times been ready to use and expend the amount so subscribed by defendant for the purposes of erecting said building and of paying such indebtedness; yet the defendant refuses to pay, &c.

Plea, the general issue.

The cause was tried by the Circuit Judge without a jury, and the following is his finding of facts:

"That on the 26th day of January, 1853, the defendant and Chauncey W. Ferris, William Waldron, Hewitt & McCollum, Henry Waldron, and certain other persons at the village of Hillsdale, were desirous of erecting a college building, in or near the village of Hillsdale, for the benefit of themselves severally.

"That the said defendant, for the purpose of effecting said object, and in consideration that the said Chauncey W. Ferris, William Waldron, Charles T. Mitchell, Hewitt & McCollum, and Henry Waldron, would subscribe their names to the agreement in writing, set out in the plaintiffs' declaration, to wit: 'We, the subscribers, severally promise to pay the sums set opposite our respective names to the order of Henry Waldron, Chauncey W. Ferris, and

Allen Hammond, for the purpose of purchasing land, or erecting a college building, in or near the village of Hillsdale, for the use of the Michigan Central College. Dated Fayette, January 26th, 1853.'

"And would set opposite their respective names, thereto subscribed, $1,000, payable as follows, viz.: $250 payable in four months, $250 in eight months, $250 in twelve months, and $250 in sixteen months, from the date thereof. And, in consideration that certain other persons would subscribe their names to the said agreement in writing, and would set opposite their respective names, thereto subscribed, certain sums of money, to be paid at certain times therein mentioned, the said defendant, on or about the 26th day of January, 1853, did subscribe his name to the said agreement, in writing, and did set opposite his name, thereto subscribed, $1,000, payable as follows, viz.: $250 in four months, $250 in eight months, $250 in twelve months, and $250 in sixteen months, from the date thereof.

"That, at the same time, the said Chauncey W. Ferris, William Waldron, Charles T. Mitchell, Hewitt & McCollum, and Henry Waldron, each subscribed their names to the said agreement in writing, and each set opposite their respective names, thereto subscribed, $1,000, payable at the same time, and in the same amounts, with the amount so as aforesaid subscribed by the said defendant.

"That the said defendant and the said Chauncey W. Ferris, William Waldron, Charles T. Mitchell, Hewitt & McCollum, and Henry Waldron, at the time they subscribed said agreement in writing, as aforesaid, did actually agree with 'each other that they would each subscribe $1,000 to said agreement in writing, as aforesaid, and would pay the same, in consideration that each of the others would subscribe the same amount to said agreement, payable at the same time, and would pay the same. And that the subscription of each, as aforesaid, was the inducement for the subscription of all the others.

"That at the same time the said defendant subscribed said agreement in writing, as aforesaid, and within a short time thereafter, certain other persons subscribed their names to the said agreement in writing, and to duplicates thereof, and set opposite their names, thereto subscribed, certain sums of money, amounting, in the aggregate, to the sum of about $12,000. That many of the other persons who subscribed said agreement did so in the presence of said defendant, and at his request, and in consideration that he had signed it as aforesaid.

"That the purpose for which said subscriptions were originally made, was for the purchasing land, or erecting a college building, in or near the village of Hillsdale, for the use of the 'Michigan Central College.' That the Michigan Central College referred to, was the institution of that name incorporated by act of the Legislature of the State of Michigan, approved March 19, 1845, and then located at Spring Arbor, in Jackson county, Michigan.

"That at the time of making said subscription, it was contemplated by the signers thereto, that said Michigan Central College should be removed to said Hillsdale, and use the premises proposed to be bought or built, and the proof of the last fact was objected to by the plaintiffs: that the subscribers knew, at the time of making said subscription, that the right of the Michigan Central College to remove to Hillsdale had been questioned, and was opposed by some of the trustees of said college.

"That on the first day of July, 1853, the said defendant had paid about $200 on his aforesaid subscription, and the said Chauncey W. Ferris, William Waldron, Charles T. Mitchell, Hewitt & McCollum, Henry Waldron, and certain other subscribers, had paid about $5,000 on their said subscriptions.

"That said amounts so paid had, at that time, been paid out and expended towards erecting a college building near the said village of Hillsdale.

"That about that time the Michigan Central College decided not to use said college building when the same should be completed, of which fact the said defendant had notice.

"That on or before January 1st, 1854, the idea of removing said Michigan Central College to Hillsdale, or of using said proposed new building by said Central College, was abandoned wholly and finally.

"That on the 27th day of September, 1853, Esbon Blackmar, who owned the land upon which said college building was being erected, conveyed said land by a sufficient deed to said defendant and certain other persons, with their knowledge and consent, upon the following trusts (among others): 1st, For the erection thereon of college or academical buildings, and for no other use or purpose whatsoever. 2d, To convey the said premises for the uses and purposes aforesaid, and not otherwise, and upon the express condition that the same should be applied to no other use or purpose whatever, to such board of trustees as may be appointed by the annual conference of the Michigan Free Will Baptist yearly meeting : provided, said board of trustees shall, within ten years from the date hereof (September 27, 1853,) be duly organized, with requisite forms to take and hold said premises, by and under the laws of the State of Michigan.

"That said defendant acted as one of the building committee for the erection of said college building, until about the 15th of October, 1853.

"That at and after the aforesaid deed of trust was made to the said defendant and others, by said Esbon Blackmar, the said defendant consented and agreed with the plaintiffs, and with the said Chauncey W. Ferris, William Waldron, Charles T. Mitchell, Hewitt & McCollum and Henry Waldron, that said college building should be erected, and should be used and occupied according to the terms and conditions of the aforesaid trust deed.

"That on or about the 2d day of January, 1854, a public meeting of the subscribers to the aforesaid agreement in writing, was held at the office of Mead & Pratt, in said village of Hillsdale, for the purpose of deciding whether the said subscribers should pay up their said subscriptions and proceed with the erection of said college building; and the said defendant, in consideration that the said Chauncey W. Ferris, William Waldron, Charles T. Mitchell, Hewitt & McCollum, and Henry Waldron, and certain other persons who had subscribed their names to said agreement in writing, did then and there verbally renew their aforesaid subscriptions, and did then and there verbally promise to pay them to the said plaintiffs, the said defendant did then and there promise the said plaintiffs, and the said Chauncey W. Ferris, William Waldron, Charles T. Mitchell, Hewitt & McCollum, and Henry Waldron, and the other subscribers then present, that he would pay the balance of the aforesaid subscription. That on or about the first day of January, 1856, the said defendant offered to pay the balance of the said subscription in flour, made from grown wheat. That on the 17th day of May, 1855, the board of trustees, appointed by the annual conference of the Michigan Free Will Baptist yearly meeting, were duly organized under and by virtue of the general college laws of this State, approved February 9, 1855, with the requisite powers to take and hold real estate, under the name and style of Hillsdale College, located at Hillsdale, Michigan. That on the 15th day of December, 1855, the said defendant, and the other grantees in the aforesaid deed of trust from the said Esbon Blackmar, conveyed the said premises described in said deed, and upon which said college building was erected, by a sufficient deed to the aforesaid trustees of Hillsdale College, and to their successors in office. That on the first day of January, 1856, the said Chauncey W. Ferris, William Waldron, Charles T. Mitchell, Hewitt & McCollum,

and Henry Waldron, had paid up the amount of their aforesaid subscriptions in full. That between $12,000 and $13,000 had been paid on the said subscriptions before the commencement of this suit.

"That before the commencement of this suit the plaintiffs had paid out and expended all the moneys so as aforesaid paid them on said subscription, in erecting said college buildings.

"That on the first day of January, 1856, said college buildings were erected and completed in said village of Hillsdale, and upon the premises described in the aforesaid trust deed from Esbon Blackmar to the defendant and others, and cost between $45,000 and $50,000. That at the time of the commencement of this suit, the indebtedness contracted on the faith of the aforesaid subscriptions, and other subscriptions, in erecting said college buildings, amounted to about $2,000.

"That the plaintiffs, through their treasurer, frequently called upon the defendant, before the commencement of this suit, to pay the balance of his aforesaid subscription.

"That the persons who acted as the faculty of the Michigan Central College, at the date of the aforesaid subscriptions, viz., January 26th, 1853, did, on the 7th day of November, 1855, commence an academical and collegiate school in said college building, and continued and carried on the same up to the time of the commencement of this suit; that Hillsdale College is under the control of the same denomination that the said Michigan Central College was, at the date of said subscriptions, viz.: The Free Will Baptist denomination; and that said denomination have endowed said Hillsdale College to the amount of $90,000.

"And I further find that the total amount of payments made by the defendant, in addition to certain amounts which were credited to him, many of which were made at his request, amounts to the sum of $493,66, leav-

ing unpaid on his subscription the sum of $504,34. To this add the interest up to the 23d of May, 1861, which is $285,44, and the amount due from him on his subscription is $791,78, for which amount the plaintiffs are entitled to judgment, with costs of suit to be taxed.

"And under the pleadings, and upon such finding, I hold as follows:

1st. That the said promise of defendant was one of mutual promise, and made in consideration of like mutual promises of said other signers of said subscription paper.

2d. That said mutual promises were a good and legal consideration for each other, and that therefore the promise of the defendant was a valid promise.

3d. That said promise of said defendant is sufficiently set forth in the first count, as a mutual promise upon the consideration of the mutual promises of the other subscribers, to enable the plaintiffs to recover thereon, on the first count of the declaration.

4th. That the purpose for which the original subscription was made, viz.: The purchasing land or erecting a college building, in or near the village of Hillsdale, for the use of the Michigan Central College, was not unlawful.

5th. That after the project of removing said Michigan Central College, or using said new college building in any way, by the Michigan Central College, had been abandoned, the new verbal agreement between defendant and said other subscribers, was a new promise, based upon new facts, and the same was legal.

6th. The same constituted new mutual promises between said subscribers, of which the promise of each constituted a valid consideration for the promise of the other.

7th. That such new promise of the said defendant is sufficiently set out in the second count of the declaration to entitle the plaintiffs to recover."

To these several rulings of the Circuit Judge, exceptions were taken by the defendant.

*G. V. N. Lothrop* and *T. M. Cooley*, for plaintiff in error, argued, that the subscription evidently contemplated ·a removal of the college from Spring Arbor, where it was located by· its charter (*Laws* 1845, *p.* 36) to Hillsdale; and was therefore unlawful:—*Attorney General v· Oakland Co. Bank, Wal. Ch.* 90; *People v. Oakland Co. Bank,* 1 *Doug. Mich.* 282; *People v. Geneva College,* 5 *Wend.* 211. Also, that if the subscription was ever binding, it ceased to be so by the refusal of the Michigan Central College to accept and use the building, and all the evidence given of the organization of Hillsdale College, and of the subsequent proceedings, and that the renewed promise was made for its benefit, was irrelevant, because foreign to the case made by the declaration. A recovery has been had here upon a state of facts not declared upon. The action cannot be sustained on the ground of subsequent expenses or debts incurred on the faith of the subscription, because, *first,* it is not alleged that those were incurred by the *plaintiffs,* and any promise which the law would imply must be in favor of the party incurring them (4 *N. H.* 433; 2 *Pick.* 580; 5 *Pick.* 228; 12 *Mass.* 190; 2 *Gray,* 423; 5 *Ohio,* 56); *second,* the expenses and debts are not alleged as the consideration for defendant's promise—the sole consideration stated being the mutual promises of the subscribers—nor, *third,* are they alleged to have been incurred at the *request* of the defendant.

The fault in the declaration in setting forth a different consideration from the ·one now relied upon, is not cured by the judgment. 1. A defective statement of consideration is only aided by verdict when the objection is for the first time taken after verdict. If taken before, the plaintiff must amend. Otherwise, where the objection was erroneously overruled by the Court, this erroneous ruling would be allowed to make good a bad declaration. Here, the objection was taken on the trial. 2d,

The rule is only available where a consideration is alleged, but is defectively set out:—1 *Chit. Pl.* 300; 2 *Bing.* 464. If the consideration actually set out is not sufficient, judgment must be arrested:—4 *B. & C.* 345. 3d. The only consideration found by the Judge, is the mutual promises. For this Court to hold that the subsequent facts constituted a consideration would be,. not to *aid* the declaration, but to *disregard* it; and not only so, but also to set aside the finding, and make a new finding of facts inconsistent, as regards the consideration, with that of the Circuit Judge, and enter judgment upon it. The finding is to be treated as a special verdict. Suppose a jury had found specially, that the consideration was mutual promises; could the Court, holding these promises invalid, enter judgment on the verdict on the ground that something else, which the jury had not found to be the consideration, in fact was so?

*C. I. Walker*, for defendants in error :

Is there a sufficient or a legal consideration? This question could, of course, have been raised on demurrer, but it is now sought to raise it upon error. This, of course, may be done, if no consideration appears in the declaration, or one that is clearly insufficient or illegal. But if, by a reasonable construction of the whole declaration, it sufficiently appears that there was a consideration capable of supporting the promise, then no advantage can be taken of the defective, informal, or uncertain manner in which the consideration may be stated. These defects are aided by verdict or judgment:—1 *Chit. Pl.* 300; 1 *Saund.* 228, (*a*); 4 *East*, 465; 2 *B. & P.* 265; 1 *New Rep.* 171; 2 *Bing.* 464.

If, therefore, the declaration shows, with reasonable certainty, that a sufficient consideration actually existed, although ever so imperfectly stated, these assignments of error are not well taken.

Before examining the declaration in the case, let us inquire what is a sufficient consideration to sustain an action upon a voluntary subscription for educational, charitable, religious, or other similar purpose.

There is a class of cases that recognize the doctrine that the consideration upon which the promise of each subscriber is founded, is the promise of the others to contribute to the same object, or, as is expressed by Parker, C. J., "it is a sufficient consideration that others were led to subscribe by the very subscription of the defend. ant:"—5 *Pick.* 506; 9 *Cush.* 537; 6 *N. H.* 194; 24 *Vt.* 189; 37 *Penn.* 213; 11 *Iowa,* 508; 2 *Ind.* 555; 2 *Denio,* 403; *Pars. on Con.* 377 *and note*; 2 *Kent,* 465 *and note.*

There is another class of cases that recognize the doctrine that the obligation of the promisee, to apply the money subscribed for the purposes for which it was subscribed—an obligation which can be enforced, at least in equity—is a good consideration for the promise of the subscriber:—8 *B. Monr.* 68; 24 *Vt.* 189; 6 *Pick.* 427.

The third class of cases recognize the doctrine that the subscription is in the nature of a proposition, which becomes mutual and binding when accepted by the promisee, and he, in good faith, *commences* the work contemplated by the subscription:—2 *Vt.* 48: 20 *Johns.* 89; 36 *Barb.* 577; 6 *Pick.* 427; 9 *Barb.* 211.

It is well established by a series of cases, that, where advances have been made, or expenses and liabilities incurred by others, in consequence of such subscriptions, before any notice of withdrawal, they are obligatory upon the subscribers, provided the advances were authorized by a fair and reasonable dependence upon the subscription, or were encouraged, or tacitly or expressly assented to by the subscribers:—6 *Md.* 115; 12 *Mass.* 190; 14 *Mass.* 171; 5 *Pick.* 506; 5 *Pick.* 228; 6 *Met.* 310; 9 *Barb.* 209; 15 *Barb.* 249; 2 *Kern.* 18; 3 *Scam.* 198; 33 *Penn.* 114; 4 *Mich.* 578.

In some of these cases the subscription is not considered a complete contract, but rather a conditional promise in consideration that the promisee, or other party, does the thing contemplated thereby, that, then, they will pay according to the terms of the subscription. The consideration or other terms of the contract, are to be proved by parol, or inferred from other circumstances:—9 *Barb.* 210; 5 *Barb.* 455; 25 *Wend.* 417.

And a proposition accepted and acted upon, although not mutual when made, becomes so by the acceptance and subsequent action:—14 *Mass.* 172; 5 *Pick.* 384; 6 *Pick.* 432; 12 *Pick.* 129; 7 *N. Y.* 349; 36 *Barb.* 581.

It is evident that this declaration was drawn by the pleader, upon the theory that the mutual promises of each subscriber were a sufficient consideration for the promise of the others. And this, we submit, is a sufficient consideration under the authorities cited. Courts will not inquire into the adequacy of the consideration for a contract, in the absence of fraud. The necessity of a consideration is rather a technical requisition, and the slightest act is frequently held a sufficient compliance with this technical requirement:—1 *Bing. N. C.* 490; 8 *A. & E.* 743; 18 *Johns.* 337; 1 *Met.* 84.

Why may not the *signing* of an agreement, by other parties, be, *of itself*, a sufficient consideration for a promise?

Then, too, may it not always be presumed that each promisor has a direct pecuniary interest in the accomplishment of the promise for which the subscription is made, and that he is interested in getting other parties to aid in its completion?

But suppose it should be held that such mutual subscriptions did not form a sufficient consideration for the individual promise of each subscriber; then the result is, that the consideration, specially and formally described in the declaration, is, in the eye of the law, no consideration; but it by no means follows that the declaration does not disclose the

actual existence of a good consideration. If facts are set forth which show that a legal consideration actually existed, although such facts are not set forth, technically, *as a consideration*, yet, as they show that there is an actual cause of action existing, on error the declaration will be held sufficient.

The facts set forth here are:

1st. That the promise was made by the defendant.

2d. That the plaintiffs accepted the proposition or promise thus made to them, and proceeded with the execution of the project contemplated, and actually completed the same.

3d. That, in so doing, they expended all the money paid into their hands on said subscription, and incurred an indebtedness, which still exists.

4th. The second count discloses positive acts of recognition and encouragement on the part of the defendant, by part payment, and by renewal of his promise to pay.

Now, these facts, which are clearly disclosed in the declaration, constitute, under *all* the. authorities, a sufficient consideration for the defendant's promise.

The second count differs from the first mainly in the averment of the renewal of the defendant's promise, after the Michigan Central College decided not to use the buildings that were to be erected.

It is insisted that the declaration, if it discloses any consideration, discloses an *illegal* one; inasmuch as the buildings to be erected were for the use of the Michigan Central College, located at Spring Arbor, and said College had no legal right to accept, or use said buildings, or to change its location.

We deny that said College was by law located at Spring Arbor, or that it had not a right to use these buildings, or remove its locality to Hillsdale.

The name of the corporation is "the Michigan Central College, at Spring Arbor," but it is not located at Spring

Arbor, or any other point; and it may be removed, at the pleasure of the trustees, to any part of the State:—19 *E. L. & Eq.* 404.

But suppose it be true that the Michigan Central College had no right to remove to Hillsdale, or to use the buildings there to be erected, it does not follow that an agreement to erect the buildings was illegal. It was neither immoral, against public policy, or in violation of law.

A contract made by the corporation to erect the buildings, or to use them, might be invalid, but a contract between A and B to erect a building for C, that C could never use, would not make the contract between A and B void.

We submit, therefore, that the declaration, even if it should be found untechnical and defective, and describing as a consideration that which is not, is still good on error, inasmuch as a good and legal consideration is shown by the declaration itself to exist.

CAMPBELL J. :

Judgment was rendered against Underwood, in the Circuit Court, upon a subscription made to aid in erecting college buildings. He, with others, who were induced to subscribe by mutual reliance, agreed to pay certain sums to defendants in error, "*for the purpose of purchasing land or erecting a college building, in or near the village of Hillsdale, for the use of the Michigan Central College.*" Plaintiff in error acted as one of a building committee in erecting a building, portions of the subscriptions, including part of his own, having been paid in, and used for that purpose. In the summer of 1853, it was known the college refused to accept the building, or remove to Hillsdale. In September, 1853, the owner of the land conveyed it to plaintiff and others, in trust for the erection thereon of buildings for college purposes, and for the transfer

thereof to trustees who might, within ten years, be incorporated upon the appointment of the Free Will Baptist Conference of Michigan. The parties agreed that the enterprise should go on for these purposes, and, in January, 1854, plaintiff and the others met and renewed their subscriptions, and agreed to pay the unpaid balance. The building was completed, and conveyed by plaintiff in error and others to the corporation designated by the conference, and has been used since for its purposes. Most of the subscriptions have been paid. Plaintiff, in January, 1856, offered to pay in flour made from grown wheat, but not otherwise.

The conclusions at which we have arrived, under the peculiar state of the record in this case, render it necessary to make some examination of the principles which we think should govern in similar cases.

It is obvious to any one who has given any attention to religious and educational movements, in this country, that few institutions can be established except by combined effort in the form of subscriptions. It is equally clear that the success of such efforts is generally regarded as an advantage to the subscribers, as well as to the public. And whenever a church or school, or other like work, has been completed in reliance upon the promise of individuals to pay for it, if undertaken, courts have generally held the subscribers bound to fulfill their promises which have been thus acted on. But there is some confusion among the cases concerning the grounds, as well as the nature and extent, of the liability of subscribers to such purposes.

The difficulties met with in the cases refer, in general, to the parties to the agreement, or to what is loosely called the consideration, including in that term the assurance that the money promised will be beneficially applied. Objections for the want of parties are frequently classed with objections to the consideration; and parties have been

discharged upon grounds by no means clear or intelligible. Any extended criticism of the cases would be more curious than profitable, as the whole subject must properly be determined by the rules governing ordinary agreements.

There must therefore be not only a party promising, but a party to enforce the promise. And, although the amount of consideration is unimportant, the promise of a subscriber can only be enforced where something is done or undertaken in reliance on that promise, in a responsible shape. And, where a subscription is to accomplish a particular object, and no direct pecuniary advantage is to result to the promisor, the consideration must usually ·be something done or undertaken in order to carry out that object. These principles seem to be generally recognized.

It is intimated by Prof. Parsons, 1 *Pars. on Cont.* 378, that the simple promise of one subscriber to pay money can not be a sufficient consideration for a similar promise by another. But this principle, it is presumed, was intended to apply only where there is no person designated to receive the funds, who assumes or is bound to expend them for the purpose designed. The cases which have denied the force of subscriptions as mutual considerations, are usually cases where no payee is named or designated, or where the one designated is either incapable of acting, or does not assume and is not bound to act: — *Boutell v. Cowdin*, 9 *Mass.* 254; *Limerick Academy v. Davis*, 11 *Mass.* 113; *Farmington Academy v. Allen*, 14 *Mass.* 172. And where this difficulty has not existed, it has been recognized repeatedly that it is a sufficient consideration that others were led to subscribe by the very subscription of the defendant: — *Trustees v. Stetson*, 5 *Pick.* 506; *Watkins v. Eames*, 9 *Cush.* 537; *George v. Harris*, 4 *N. H.* 533; *Congregational Society v. Perry*, 6 *N. H.* 164; *Troy Academy v. Nelson*, 24 *Vt.* 189; *Amherst Academy v. Cowls*, 6 *Pick.* 427. Where work is done or expense incurred under a promise, the liability is not disputed by any authority.

12 Mich.—G.

Until the persons designated to receive the money assume their duties — or, where none are designated, until some person incurs expense or liability in fair reliance on the subscriptions — the offer of the subscribers may properly be regarded as liable to withdrawal. In such case the question is not properly whether there is any consideration for the agreement, but whether there is any agreement at all. Much of the confusion in the cases arises from not distinguishing between the contract and the consideration, and in not drawing any line between different forms of subscription to determine who are the contracting parties. There are decisions which hold, that subscriptions in favor of persons or corporations legally bound to apply such funds as are subscribed, in accordance with the wishes of the donors, need no acceptance or further action to make them binding on the subscribers: — *Troy Academy v. Nelson*, 24 *Vt.* 189; *Trustees v. Stetson*, 5 *Pick.* 506; *Amherst Academy v. Cowls*, 6 *Pick.* 427. In other cases there must, as it, would seem, be an acceptance of the trust or duty, by some one competent in law to undertake it. And in all cases the object must be one which is not rendered evidently impossible by law or otherwise.

But where there is no legal or natural obstacle to the performance of the thing designed, and lawful means are provided, and competent agents are designated and accept their trust, it is not easy to see how such an agreement differs from any other valid contract whereby parties contract to furnish funds for a common object beneficial to them both. We can not hesitate to hold that a school or church, or other similar institution, which men are anxious to have built, and promise to pay for, is "valuable" to them in a legal sense. In most cases there is a pecuniary value in the enhanced price of neighboring property. But, apart from this, any worthy purpose for which men generally are willing to expend money, must be regarded by courts as worth money, when it is promised. We know of no safer test to apply to human transactions.

Had the declaration been properly framed, we should, therefore, be compelled to hold that the plaintiff in error was liable in this action. And we do not think the evidence admitted would have been improperly received to establish the case under proper pleadings. But we do not think the declaration so framed as to maintain the judgment. The case shows that the original [promise was in favor of the Michigan Central College, and that the subsequent promise was for an entirely different purpose. The declaration in both counts is confined to a subscription for the use of the Michigan Central College.

The subscription is not framed, nor is the case so made out as to show it was designed, as an inducement to that college to endeavor to obtain authority to remove to Hillsdale. Such an undertaking would have been a good foundation for a subscription. As the case stands now, it shows a subscription for the use of a college not located at Hillsdale, and which never agreed to go there. The statute incorporating this college as the Michigan Central College at Spring Arbor, was, we think, operative to confine it to that place until amended; and the college could not be lawfully removed without permission from the Legislature: —*People v. Oakland Co. Bank*, 1 *Doug. Mich.* 282. The original subscription, being for an impossible purpose, was invalid; and the renewed subscription is not declared upon according to the facts, which would sustain it. A further amendment is therefore necessary in order to permit the proper evidence to be received. Judgment must be reversed, with costs, and a new trial granted.

CHRISTIANCY J., concurred.

MANNING J.:

The following is a copy of the subscription paper signed by the plaintiff in error and others: "We, the subscribers, severally promise to pay the sums set opposite our respective names, to the order of Henry Waldron,

Chauncey W. Ferris, and Allen Hammond, for the purpose of procuring land, or erecting a college building, in or near the village of Hillsdale, for the use of the Michigan Central College. Fayette, January 26th, 1853."

It is not denied that here is a promise, but it is said that the plaintiff in error is not bound by it, because there was no consideration for it. What is a considera- tion? The price paid or agreed to be paid for the prom- ise — that is, the thing done or agreed to be done, is the consideration. Hence mutual promises are a good consideration for each other; as where A promises B to do a certain thing in consideration that B promises A to do a certain other thing. It is not necessary that either party should be pecuniarily benefited by the act done or to be done by the other. The promise may inure to the benefit of a third person, and not of the party to whom it is made. It is immaterial, therefore, that the college which is to receive the benefit of the promise is not a party to it. The benefit to the college is the inducement to, and not the consideration of, the promise, which is the subscription of the paper by others. Each subscriber promises to pay to the persons named in the subscription, for the purpose therein mentioned, the sum set opposite his name, in consideration of a like promise by every other subscriber. This is clearly implied in the subscrip- tion itself. It is the understanding of every person who puts his name to a subscription paper; and when the object is conducive to the public weal, as in the case before us, it seems to me it would be a strange perver- sion of legal principle to refuse to enforce the subscrip- tion on a plea of want of consideration. Most of our church and college edifices have been built by sub- scriptions like the one before us; and shall it be said that the law is indifferent to such enterprises, and that it looks on such subscriptions as blank pieces of paper? I think not.

UNDERWOOD v. WALDRON.

Another objection is, that the college was located at Spring Arbor, and could not be removed to Hillsdale without a violation of its charter, and that the promise was, therefore, for an object that could not lawfully be accomplished. If it was to do an illegal act—by which I mean something that was evil in itself, or was prohibited by statute—or to do what was morally and physically impossible, the objection would be a valid one. The removal to Hillsdale would be unlawful only in the sense that it would be a violation of the contract between the college and State, which the latter might waive. It would not be a violation of any criminal or other law of the State; and it is but fair to presume that the subscribers contemplated a removal with the assent of the State. The contrary does not appear, and we are bound to suppose the parties had a lawful instead of an unlawful object in view, when both came within the phraseology of the agreement. We must so construe it as to give effect to it.

But the Judge finds that the college refused to remove to Hillsdale. That being the case, there was, it seems to me, a failure in the object of the enterprise that released the subscribers from its further prosecution. But he also found, that, after the refusal, a new promise was entered into to complete the building for another purpose, viz.: to be used and occupied according to the terms and conditions of a certain trust deed, mentioned in the finding. On this last promise the defendants in error, who were plaintiffs below, would have been entitled to a judgment had it been set out in their declaration. They proved a different cause of action from the one stated in the pleadings.

MARTIN, CH. J. was not present when the cause was decided.

*Judgment reversed.*