## CARLTON WHEELER vs. S. GRIDLEY TOOF.

A defendant who fails to deny the execution of a promissory note, at the time of pleading, will not be permitted to question it at the trial, even though there may appear, on the face of the instrument, some indications that it may have been altered.

At the time of dedicating a church, A promised verbally, to pay $50 towards liquidating the indebtedness of the Society and to enable it to complete its church. B, a Trustee of the Society, had advanced moneys for the Church, and A, in lieu of his promise to contribute money to the Society, gave his note for $50 payable to B or bearer. In a suit on the note, *Held*, that the consideration was sufficient, and that B might recover in his own name.

*Van Buren Circuit*, 1871.

This action was commenced before a Justice of the Peace, the plaintiff declaring upon a certain promissory note executed by the defendant, payable to the plaintiff or bearer, and dated December 2, 1868, for the sum of $50, with 10 per cent. interest, due October 1st., then next following.

Judgment was rendered in the Court below against the defendant, for the face of the note with interest.

The defendant appeals from that judgment. At the trial in this Court, the plaintiff produced the note and offered the same in evidence. The defendant's counsel objected to the introduction of the note, on the ground that it had been changed since its execution, by the addition of the words "with ten per cent. interest"—that from the face of the note this addition was apparent.

No affidavit denying the execution of the note had been filed, the objection was overruled, and the note was read in evidence.—The plaintiff then introduced a witness who testified to the amount of interest accrued upon the note, and thereupon rested his case.

The defendant then testified in relation to the circumstances of giving the note—that at the time of the dedication of the First Presbyterian Church of Decatur, the society desired to raise funds to liquidate the indebtedness which had accrued in the building of the Church. In referring to this matter the defendant said:

"There was a statement made that the Society was about $1,500 in debt, and they wished to raise funds to liquidate the debt. On the evening of that day I told them they might count on me for $50. I told the Society so.

WHEELER v. TOOF.

"I was in the gallery. I told Mr. Wheeler I could not pay that money then; he said that was all right; he said I should come down to his office sometime and put it in shape of a due bill—something of that kind. I went there some time afterward, and he put it in writing, and I signed it."

The plaintiff, it appears, was one of the Trustees of the Society, who, by way of rebutting, testified that at the time of the dedication " we called for volunteer subscriptions to liquidate the debt ; various parties stated what they would give; they also took up a contribution in money, and parties who were not prepared to pay money wrote the amount with their name upon a slip of paper and dropped that instead of money. The defendant was there and proposed to give $50. After services he came forward and said he was not prepared to pay it then; he would like to pay it some time in the Fall I says to him, "you had better come down and see me, and we'll fix it up; give me your note for it." He said he would do so. I afterwards saw him and put it in writing, and he signed it."

Wm. H. Nearpass testified : " The statement at the time of the dedication, was, as I understood it, to pay the indebtedness and to finish up the house. I could not say positive whether the word *finish* was used."

Witness Bray, testified that at the time of dedication, Elder Toof said there was some work yet to be done. It was said in this way : " When the church was completed" or "would be completed" (it was not quite done) "there would be an indebtedness of about $1,500, and this subscription was taken to pay that indebtedness and to finish up the church."

*Upton & Tucker*, for Plaintiff.

*Foster & Field* and *N. A. Balch*, for Defendant.

*By the Court*, BROWN, J.—From the testimony in the case, the Court finds the following facts :

1. That the note in question has not been altered since its execution.

2. That the note in question was given as a promise to pay $50, to assist the First Presbyterian Church of Decatur to pay its indebt-

edness incurred and to be incurred in the construction of their church.

3. That the plaintiff at the time of taking the note had advanced funds of his own to pay for labor and materials in the construction of the church, and that on taking such note he credited the church with the sum of $50.

While it is true that the words in the note relative to interest appear to be written in ink a shade darker than the body of the note, it does not appear different from that of the signature.

The plaintiff has not denied the execution of the note, as required by the rule, to entitle him to question its validity.

It is claimed on the part of the defendant that there was no consideration for the note—that if it was the understanding and agreement of the defendant that he was to pay money for a past indebtedness, and no additional obligation was incurred by reason of such promise or on the faith thereof, the promise would be but a mere *nudum pactum;* and in support of this position the following authorities were cited: 1 *Gr. on Ev.,* § 564 *et. seq.; Sheldon vs. Hawes,* 15 *Mich.,* 517; *Wilde vs. Armsby,* 6 *Cush.,* 314; 2 *Par. on Con.* (5th *Ed.*) 721, 722, note *y;* 1 *Par. on Con.,* 453; *Limerick Academy rs. Davis,* 11 *Mass.,* 112; 1 *Comst.,* 581; 9 *Mass.,* 252; 2 *Pick.,* 578; *Edw. on Notes and Bills,* 324.

It was contended at the argument that the promise of the defendant made at the church was without consideration, and that therefore his subsequent promise embodied in the note to the plaintiff, being made in lieu of the first promise, cannot be enforced; and the case in 5 *Pick.,* 390, is relied upon in support of the proposition.

The counsel for the defendant further insisted that at most the obligation incurred by the defendant was but a moral one, and that such obligations were not sufficient to support an express promise in writing, and the case of *Mills vs. Wyman,* 3 *Pick.,* 207, is cited as authority.

A consideration and examination of the authorities upon the questions thus raised is full of interest. These authorities, are far from being uniform. and the grounds upon which the cases have been decided are so varied as to lead to some confusion, and unless critically examined many of them would tend to lead us far from correct principles. Some of the cases hold that a promise of one subscriber

to pay money is a sufficient consideration for a similar promise by another, while others deny the force of subscriptions as mutual considerations. Concerning this latter class of cases our own Supreme Court in *Underwood vs. Waldron*, 12 *Mich.*, 89, say : " The cases which have denied the force of subscriptions as mutual considerations, are usually cases where no payee is named or designated, or where the one designated is either incapable of acting, or does not assume and is not bound to act ;" and the cases in 9, 11 and 14 *Mass.*, are cited as cases of this character. And where this difficulty has not existed it has been recognized repeatedly that it is a sufficient consideration that others were led to subscribe by the very subscription of the defendant. 5 *Pick.*, 506 ; 9 *Cush.*, 537 ; 4 *N. H.*, 533 ; 6 *N. H.*, 164 ; 24 *Vt.*, 189 ; 6 *Pick.*, 427.

In the case referred to in 12 *Mich.*, Judge Campbell says, that " objections for the want of parties are frequently classed with objections to the consideration ; and parties have been discharged upon grounds by no means clear or intelligible. Any extended criticism of the cases would be more curious than profitable, as the whole subject must be determined by the rules governing ordinary agreements."

If we are to apply in this class of cases the same tests that we do in an ordinary agreement, I can see no difficulty. If in the examination of the various authorities upon this question we bear in mind the distinction between the contract and the consideration, and draw clearly the line between the different forms of promises, we shall be able to avoid the confusion into which we should otherwise be drawn by a contemplation of the cases referred to. ·

Is a church valuable in a legal sense ? Is the citizen benefited by these promoters of civilization ? by the institutions that tend to make him secure in his person and his property ? In the case of *Un. derwood vs. Waldron*, the learned Judge says : " We cannot hesitate to hold that a school or church, or other similar institution, which we are anxious to have built, and promise to pay for is " valuable" to them in a legal sense. In most cases there is a pecuniary value in the enhanced prices of neighboring property. But, apart from this, any worthy purpose for which men generally are willing to expend money. must be regarded by courts as worth money, when it is promised. We know of no safer test to apply to human transactions."

To the same effect, see 6 *Mass.*, 42 ; 14 *Id* , 172 ; 15 *Mihc.*, 237 ; 6

*Pick.,*431 ; 12 *Pick* ,129; 7 *N. Y.,*349. Most of these cases hold that a moral obligation is a sufficient consideration to support an express promise.

It was urged at the argument that the note was, if it had any validity, the property of the Church, and that therefore Wheeler could not recover upon it. It would be a sufficient answer to this objection that one who holds paper payable to bearer, for another, may sue in his own name and his want of interest is no objection. 7. *Cowen,* 174 ; 11 *Johnson,* 52 ; 5 *Wend.,* 257 ; 3 *Johnson's Cases,* 264 ; and it has even been held that the fact that the holder and owner of a negotiable note prosecutes it in the name of a stranger, without his knowledge or consent, is no bar to a recovery. 15 *Wend.,* 640 ; 25 *Id.,* 411.

Upon this question of consideration the distinction between inducement and consideration must not be overlooked. It is not necessary that the consideration should go to the promisor. A consideration to a third party may be an inducement to a person to give his note ; and in such case the promise is just as binding as though the promisor had received the benefit. A is indebted to B ; C to discharge B,s indebtedness gives A his own note, and A thereupon discharges B. Here the consideration was for the benefit of B, and was an inducement for C's promise.

In the case before us, the Church Society had incurred an indebtedness and subsequently made further expenditures. To assist the Society in the payment of its obligations and to enable it to complete its church, the defendant promised to pay $50. The Society was indebted to the plaintiff for moneys advanced to him. The defendant gave his note to the plaintiff, and the plaintiff credited the Church Society with $50. The Society received the consideration. With this view of the case it will be seen that it is of but little consequence whether, as a matter of fact, the defendant has ever availed himself of the benefits he might receive from the civilizing and enlightening influences of the Church.

Let judgment be entered for the plaintiff for the sum of $60 90, that being the amount of the note with interest