ANDREW M. HASKELL *v.* JAMES H. OAK.

Penobscot. Opinion December, 28, 1883.

*Corporation. Stockholders. Contract.*

The stockholders of a corporation at a time when the corporate indebtedness was something over four thousand dollars and the assets less than two thousand dollars, subscribed an agreement promising to pay the treasurer "the sums placed against our names, respectively, for the purpose of liquidating the debt against said association," and all but one paid their subscriptions and the business of the corporation was continued for three years. *Held,* that an action of assumpsit could be maintained on the agreement against the delinquent subscriber in the name of the treasurer for the benefit of those who were creditors at the time of the subscription.

ON REPORT of agreed statement of facts.

The writ, dated March 2, 1882, was assumpsit upon the following agreement:

"Garland April 17, 1877.

"We, the subscribers, hereby agree to pay Andrew M. Haskell, treasurer of the Garland Dairying Association, on · or before the first day of June, 1877, the sums placed against our names, respectively, for the purpose of liquidating the debt against said association; provided that any subscriber may have the privilege of discharging his subscription by giving to some creditor of said association an acceptable note for the amount of his subscription, or such part of it as has not been paid in cash, payable in one year from said first day of June, said note to draw interest at the rate of six per cent. per annum."

Subscribed in different amounts by fifty-two stockholders. The defendant's subscription was fifty dollars.

Other material facts are stated in the opinion.

*Thomas H. B. Pierce,* for the plaintiff, cited: 1 Pars. Contracts, (2 ed.) 357; R. S., c. 48, § 9; *Amherst Acad.* v. *Cowls,*

6 Pick. 427 ; *Hanson* v. *Stetson*, 5 Pick. 506 ; *Carr* v. *Bartlett*, 72 Maine, 120 ; *Fryeburg Academy* v. *Ripley*, 6 Maine, 443 ; 16 Am. Law Reg. 553, 554 ; *Wood* v. *Dummer*, 3 Mason, 308.

*Davis and Bailey*, for the defendant.

The defense to this suit is a want of consideration.

Defendant was a stockholder who had paid the full amount of his stock subscription. He, therefore, was not liable for the debts of the corporation or any part thereof. Laws of 1871, c. 205, § 5 ; *Poor* v. *Willoughby*, 64 Maine, 379.

There is no pretense that he had assumed any liability as an officer of the corporation.

What possible consideration is there for this subscription? It did not operate as a payment of the debt. The corporate property was not saved to the corporation thereby ; for notwithstanding the subscription the property all went to the creditors. There is no pretense, at least, it nowhere appears in the statement of facts, that any delay even, was granted by any creditor on account of it ; that the final gobbling up of all the property did not occur just as soon as it would have done if no subscription had been made. There is no intimation that any creditor was pressing his claim and gave any day on account thereof ; or that any attachment, lien, right or privilege was surrendered as a consideration therefor. From all that appears, any creditor could have prosecuted any day notwithstanding the subscription to enforce his claim.

A more absolutely naked agreement it is difficult to conceive of.

"A gratuitous subscription to promote the objects for which a corporation is established cannot be enforced unless the promisee has, in reliance on the promise sued on, done something or incurred or assumed some liability or obligation. And it is not sufficient that others were led to subscribe by the subscription sought to be enforced." *Church* v. *Kendall*, 121 Mass. 528.

Thus the case would stand if the creditors were suing.

This whole doctrine of voluntary subscriptions has so recently been considered by this court in *Carr* v. *Bartlett*, 72 Maine, 120, it is unnecessary to allude to any other authorities, as that case and those therein cited cover every branch of this subject.

BARROWS, J. The defendant was a stockholder in the Garland Dairying Association, a corporation organized under the general law in 1874, which in April, 1877, had an outstanding indebtedness of something over $4000, and resources (including land and buildings at their estimated value) of something less than $2000.

Whereupon, fifty-two stockholders, of whom the defendant was one, subscribed the agreement upon which this suit is brought, promising to pay (the plaintiff) "Andrew M. Haskell, treasurer of the Garland Dairying Association, on or before the first day of June, 1877, the sums placed against our names, respectively, for the purpose of liquidating the debt against the Association."

The subscription amounted to $2250, the defendant placing against his name, at the time of signing, the figures $50. All the subscribers but the defendant paid as they agreed, and the association continued in business during the years 1877, 1878 and 1879. But in April, 1880, they gave up business and transferred all the remaining property, real and personal, to their creditors. It was insufficient to satisfy the amount due, and this suit is prosecuted in the treasurer's name for the benefit of those who were creditors of the corporation at the date of the subscription. The defense set up is that there was no consideration for the defendant's promise. And it is argued in his behalf on the ground, that, as his stock had all been paid for, he was not liable for any debts of the corporation, under the laws of 1871, c. 205, but was expressly relieved therefrom, by § 5, of that chapter. It is true, he was under no such liability. *Poor* v. *Willoughby*, 64 Maine, 379. But he had a right to agree with others to save his stock from immediate sacrifice and the business in which he was interested from impending failure. As their affairs stood, they could not go on except in defiance of law. Though their stockholders were relieved from individual liability, they were still

prohibited, by R. S., c. 48, § 9, clause 1, from contracting debts beyond a certain amount, proportioned to their capital, investments, and assets.

It does not follow from the naked fact that the defendant was under no personal liability for the corporation debts, that his subscription with his fellow-stockholders to pay the pressing debts of a corporation in which he held stock, and thus to make up their capital and assets to an amount which would enable them to continue the business, was without consideration.

Where the holding out of a *bona fide* opportunity and prospect of pecuniary gain to himself through legitimate business is the motive presented to the promisor, it cannot be said that there is a want of consideration for the promise. Where, as here, he has had that opportunity, which was all he bargained for, it is not in his mouth to say that there was no consideration for the promise because it turned out that in the prosecution of the business there was in fact no gain. The position in which the promise was made was this : The defendant owned stock in a corporation which owed an amount more than twice its capital and assets. The inference is irresistible that its creditors were pressing, and that when the corporation had voted to sell their factory for less than one-fourth of the amount of their debts, (the rest of their resources not amounting to another fourth,) the question presented to all interested, was, whether the experiment should be given up and the business cease? It was plain that it must do so unless a subscription of the stockholders upon which the creditors might rely for the ultimate payment of their claims could be made. It was made, and the business went on for three years more. Each stockholder's interest (the defendant's included) was made, temporarily at least, more valuable and the opportunity to continue a business which might prove profitable was secured. The delay sought has been given. It may fairly be inferred that there was an understanding with the creditors that it would be given if a subscription large enough to place the corporation upon a fair footing as to solvency could be obtained. All the subscriptions except that made by the defendant have been paid, and still a portion of the indebtment out-

standing when the stockholders subscribed to procure the delay remains unpaid. All the payments made by those who subscribed with him have inured to the benefit of the defendant's stock.

No element is wanting here which was found sufficient to charge the defendant upon her subscription in *Carr* v. *Bartlett,* 72 Maine, 120. It makes no difference whether the promise is made to enable a business enterprise to commence operations or to continue them. The consideration for the promise is substantially the same in both cases. The undertaking of the subscribers is not merely inchoate; the case finds that it has been fully performed by all concerned therein except the defendant.

Good faith to his fellow-stockholders who have paid for the benefit of his stock, and to the creditors who have forborne to urge their claims to enable the corporation to prosecute its enterprise for several years longer, forbids the defendant, at this stage, to recede. There was a sufficient consideration moving to him from each of these parties; and his promise was made to one, who, on the face of the subscription paper, appears to have been the trustee for them both. See as to the effect of mutual promises upon a subscription paper, *Allen* v. *Duffy,* (per COOLEY, C. J.) Mich. given in 9 Reporter, 646.

To say nothing of the advantage secured to himself as owner of an overloaded stock through the payments made by his fellow subscribers, there was, in the implied undertaking of the payee to devote the subscriptions which he accepted to the purpose declared, a sufficient consideration to support the promise. *Trustees of Fryeburg Parsonage Fund* v. *Ripley,* 6 Maine, 442, 445, 446; *Amherst Academy* v. *Cowls,* 6 Pick. 427; *Collier* v. *Baptist Education Society,* 8 B. Monroe, 68; *Troy Academy* v. *Nelson,* 24 Vt. 189, and other cases referred to by Judge BENNETT in his note upon *Church* v. *Kendall,* 16 Am. Law Register, 546.

In fine, in this purely business undertaking, none of the thinly woven technicalities, of which courts have now and then made a screen for the rash benevolence that has impelled some one in an unguarded moment to promise a gift for some public charity, can avail this defendant. The few (mostly old) cases in which

courts, while stigmatizing the defence as base, dishonorable and unjust, have suffered the purchaser of a cheap and fleeting reputation for public spirit and liberality to avoid his promise by cries of corban — no promisee — no privity with promisee, and the like, have no application here.

*Judgment for plaintiff for $50 and interest from June 1, 1877.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and LIBBEY, JJ., concurred.