## PFEIL vs. HIGBY and LYMAN.

*Damages for non-payment of debt in foreign country : Current rate of exchange in legal tenders, allowed.*

Where defendants were bound to pay a foreign debt of plaintiff, and to indemnify him from liability thereon, and plaintiff, on their default, paid it in exchange purchased at the current rate with legal tender notes, defendants were liable to him in the full amount paid for such exchange.

APPEAL from the Circuit Court for *Milwaukee* County.

This appeal was taken by the defendants from a judgment for the plaintiff. The case is stated in the opinion. The contract of the plaintiff with Kriegsman, therein referred to, was

secured by mortgage on real estate of the plaintiff in the city of Milwaukee.

*E. Mariner,*for appellants. [No brief on file.]

*Smith & Salomon,* for respondent, cited Sedgw. on Dam., 237–8, and notes; Story on Prom. Notes, §§ 396–399, and notes; *Grant v. Healey,* 3 Sum., 525; *Lanusse v. Barker,* 3 Wheat., 101, 147; Edwards on Bills, 725–28; 1 Parsons on Notes and Bills, 648, 658, 663, and note (n); *Woodhull v.* *Wagner,* 1 Bald., 296, 302.

COLE, J. By his contract, the plaintiff was bound to pay six hundred and eighty pounds sterling in current funds of Great Britain, to Kriegsman at Riga. In consideration of the mortgaged property being conveyed to Lyman, the defendants gave their bond to the plaintiff, assuming this liability, and agreeing to pay this debt to Kriegsman at Riga in like funds, with interest; and further agreeing to indemnify and save the plaintiff harmless from all liability upon his obligation. Now it was evidently the duty of the defendants to have this money at Riga when *Pfeil's* obligation matured. They might do this by sending the coin there, or might resort to the more usual course in commercial transactions—buy a sufficient amount of exchange, which would replace the requisite sum at Riga in the proper funds. If they chose to transmit the money by means of exchange on Great Britain, they could pay for this exchange in coin or legal tender notes. But it seems they are in default on their contract, and as a consequence the plaintiff was obliged to pay his own debt, which they had assumed and agreed to discharge. He paid this debt by procuring exchange on Great Britain, and paying therefor legal tender notes, as he had a perfect right to do. And although gold and legal tender notes are by law on a par, yet as a matter of fact, owing to the great depreciation of our currency, exchange could not be bought at the same rate when paid for in legal tender notes as when paid for in coin. Now,

as the plaintiff has brought suit here, what must be the measure of his recovery?

The circuit court allowed him the amount which he actually paid out in order to remit the debt he owed to Riga, the place where it was payable. And the defendants are required to pay as much as they would have paid by fulfilling their contract, and remitting their debt in exchange bought with legal tender notes. It appears to us that this judgment is correct, and does substantial justice between the parties.

If Kriegsman had brought suit on the plaintiff's bond in this state, according to what we deem the better rule upon the point, he would have been allowed the rate of exchange on England. We are well aware that there is a conflict of opinion upon this point; but the weight of authority, if we consider the American and English cases together, allows the creditor the rate instead of the par of exchange. And certainly this is the manifest equity and justice of the case, and we think it the better rule of law. Mr. Justice STORY, in *Grant v. Healy*, 3 Sumner, 523–4, has laid down the rule in the following clear language: "I take," he says, "the general doctrine to be clear, that whenever a debt is made payable in one country, and is afterwards sued for in another country, the creditor is entitled to receive the full sum necessary to replace the money in the country where it ought to have been paid, with interest for the delay; for then, and then only, is he fully indemnified for the violation of the contract. In every such case, the plaintiff is, therefore, entitled to have the debt due him first ascertained at the par of exchange between the two countries, and then to have the rate of exchange between those countries added to or subtracted from the amount, as the case may require, in order to replace the money in the country where it ought to be paid. It seems to me that this doctrine is founded on the true principles of reciprocal justice." It appears to us that this reasoning is sound, and we are disposed to follow it.

In this case the court found that at the time the plaintiff remitted and paid to Kriegsman the amount owing to him, exchange at Milwaukee on London, or on Riga, payable in English currency according to the contract, was at the rate of seven dollars and ten cents or more to the pound sterling; and that the plaintiff necessarily paid for the draft sent by him to. Kriegsman an amount which, with interest thereon, was equal to the sum recovered. It is true, this was the rate payable in tender notes, but these notes were then and are now the legal currency of the country.

The judgment of the circuit court must therefore be affirmed,

*By the Court.*—Judgment affirmed.