## HAWES vs. WOOLCOCK.

(1–4.) LAW OF CONTRACTS : *Promise of A. to pay joint debt of himself and B.—Consideration.—Mutual promises.—Release of B. from liability.*

(5, 6.) NON-NEGOTIABLE NOTE : *Note payable in foreign currency.—Rule of damages as to exchange.—Valuation of payments made in currency of this country.*

1. The promise of A. to pay the joint debt of himself and B., by applying to its extinguishment a note running from the creditor to himself individually, was valid, if based on a good consideration.
2. The creditor's agreement for a delay in the payment of such joint indebtedness after due, would be a sufficient consideration for A.'s promise.
3. The mutual promises of A. to make, and of the creditor to accept, such application of the note, would be a good consideration for each other.
4. A release of B. from his liability, would not discharge A. under our statute ; and an averment of such release would show a valid counterclaim to an action upon the note to A. by one who took it subject to the equities between the parties, if it were shown that such release was made before the plaintiff acquired the note.
5. In case of a note payable in Canada currency (which was at the date thereof, and ever since has been, at a premium as compared with the currency of the United States), the premium must be calculated at the rate current *at the date of the judgment ;* which must, therefore, be for a sum that will then purchase Canada funds to the amount found due on the note.
6. The value of any payment hitherto made on the note in currency of the United States, must be determined with reference to the rate of premium current at the time of such payment.

APPEAL from the Circuit Court for *Jefferson* County.

Action on a note made July 3, 1866, by the defendant, at Adelaide, in Canada, promising to pay William J. Hoare, or order, one year from date, $600 in Canada currency, with interest at ten per cent. The complaint avers that when the note fell due, Canada currency was worth a premium over United States currency of thirty-seven per cent.; that nothing was paid on the note until November 9, 1869, at which time said note amounted to $1,097.37 in American currency; that upon the day last mentioned, defendant paid and caused to be indorsed upon the note, $650 in American currency, which was worth on that day, in Canada currency, $477.87 (the latter being upon that day at a premium of 25½ per cent. over American currency), leaving a balance due on the note of $619.50 in current money of the United States; and that plaintiff purchased the note of the payee, for a valuable consideration, and is the owner and holder thereof, etc.

The answer alleges that on the 15th of July, 1865, defendant was, and still is, the owner of a farm in Canada; that on that day he leased it by parol to said William J. Hoare and one Walter W. Hoare, they agreeing to pay him, as rent, what the use of the farm was reasonably worth; that on the 10th of October, 1865, said William J. and Walter W. Hoare took possession of the farm under said lease, and occupied the same until October 10, 1868; that the use thereof was reasonably worth $300 per year, in Canada money; that William J. Hoare was, and is, in justice and equity, liable to pay one-half the rent of said farm, and has not paid any part thereof; that Walter W. Hoare has paid $500 of the rent to defendant; that on the 9th of November, 1869, said William J. and defendant had an accounting together of and concerning the rent of said farm, and agreed to call it $300 per year in Canada money, and said William J. then and

there agreed with defendant that if the latter would wait for the balance then due of said rent until said William J. could go to Canada and see Walter W. Hoare, he, said William J., would bring back to defendant the written obligation or agreement of said Walter W. to pay said balance to defendant, and if he failed to bring back such agreement, he, said William J., would pay the balance of said rent himself to defendant upon his return from Canada, and the balance of the note in suit, then owned and held by said William J., should be applied in part payment of said rent; that defendant, in consideration of this promise, agreed with said William J. to wait for the balance of said rent until the latter could go to Canada and return therefrom, and that if he should bring back to defendant such written obligation of Walter W., then William J. should be released from any further payment of said rent, and defendant would then pay the balance of said note; that William J. then went to Canada, and returned to Wisconsin about December 1, 1869, but failed to procure or bring any written or other promise by Walter W. to pay said rent. It is further alleged that in consideration of said Walter W. having paid defendant $500 as aforesaid of the rent of said farm, defendant had released him from all further liability to him for said rent; and that at the time of the sale of said note to plaintiff (which is alleged to have been about the middle of December, 1869), there was due from William J. Hoare to defendant, for said rent, the sum of $400 in Canada money, and certain specified interest on different portions of that sum; and the total amount thus due, or so much as may be necessary to discharge the note, defendant claims as a set-off to the plaintiff's demand. Reply, in denial of the counterclaim.

On the trial, the court allowed the plaintiff, against objection, to show that in July, 1867, the premium on Canada currency over United States currency was

thirty-seven per cent., and that on the 9th of November, 1869, it was thirty-two per cent. On cross-examination of the witness, he testified that the premium, at the time of trial, was nineteen or twenty per cent. A motion for a nonsuit, on the ground that plaintiff had not shown a demand of payment in Canada currency before suit brought, was denied. The court refused to permit defendant to prove the facts alleged in his counterclaim, on the ground that the agreement to pay rent was a joint agreement of Walter and William J. Hoare, and could not be offset against the note in suit.

The court instructed the jury to cast the interest on the note to the time of the payment endorsed, add the premium on Canada money, and deduct the $640 paid, and the balance then remaining due in our money, with interest since that time, should be the amount of their verdict. Verdict in favor of the plaintiff for $436.65; new trial denied; and judgment on the verdict; from which defendant appealed.

*L. B. Caswell*, for appellant, argued that a note, payable in currency of any kind, may be discharged with treasury notes, and the enlargement of the judgment by the addition of any premium was error; that the case of *Warner v. Sauk Co. Bank* (20 Wis. 494), and numerous other cases in New York and other states, were decisive on that point; that even if the decision in the *Hepburn case* (7 Wall. 229) was to stand, it merely held that the judgment on a coin note could only be paid in coin, and did not permit the plaintiff to have the judgment enlarged by adding a premium; that if plaintiff expected to receive the value of Canada currency, he should have demanded such before bringing suit; and that if any premium is to be allowed, the rule of computation adopted by the court below was erroneous, as it compelled defendant to pay premium on the amount of the judgment, not at the rate prevailing at the time of the trial, but at the higher rate

existing in November, 1869. He also contended that the court erred in excluding evidence to sustain the counterclaim.

*Weymouth & Porter* and *J. J. Enos*, for respondent, to the point that the note in suit was a negotiable note, and that no demand was necessary, cited *Judah v. Harris*, 19 Johns. 144; *Keith v. Jones*, 9 id. 120; *Leggett v. Jones*, 10 Wis. 34. As to the measure of recovery, they cited Edwards on B. & N. 725, and cases there cited. As to the rent due for defendant's farm, they contended it was a charge against the firm of W. J. & W. W. Hoare, and therefore could not be set off against the note.

PAINE, J. The court below erred in excluding all evidence of the counterclaim set up in the answer. The note being payable in Canada currency, and therefore not negotiable, and plaintiff having purchased it long after it became due, it was, of course, subject to the equities between the original parties. The answer then shows, by way of counterclaim, that after the note was due, and while it was held by William J. Hoare, the payee, the defendant being indebted to him on the note, and he and his brother being jointly indebted to the defendant in a larger amount for the rent of a farm leased by him to them in Canada, there was an accounting between the defendant and William J. Hoare as to the amount of the rent due, and a mutual agreement that if the defendant would wait for the rent until Hoare could go to Canada, if the latter did not bring back to the defendant the written obligation of his brother to pay the balance of the rent, he would himself pay it, and that so much of it as was necessary should be applied in payment of this note. It was further alleged that Hoare went to Canada, and failed to bring back the written obligation of his brother to pay the rent as alleged.

We are unable to see why these facts do not show a

valid, binding agreement between William J. Hoare and the defendant to apply the rent in payment of the note. There can be no reasons as between Hoare and his brother that should deprive him of the authority to make such an agreement. It is not like the case of a partner or joint owner selling the joint property in payment of his individual debt. On the contrary, it is a case of a joint debtor paying the joint indebtedness with his individual property. This he may always do. And after he has made a valid agreement for such payment by applying a claim in his own favor in extinguishment of the joint debt, there seems to be no reason why it should not be enforced.

There was a sufficient consideration for the agreement. The defendant promised to wait for the rent until Hoare could go to Canada and return. This alone would have been a sufficient consideration. But without this, the promise of each was a good consideration for the promise of the other. Neither party could have enforced such a set-off without such an agreement. The promise of Hoare on the one part to apply his individual claim in payment of the joint debt of himself and brother, and the promise of the defendant on the other part to receive it as such payment, were each a good consideration for the other, and sufficient to uphold it as an agreement. It would operate as a mutual application and extinguishment of the two debts, so far as the one was set off against the other.

It is also alleged in the answer, that the defendant had released the brother of William J. Hoare from the indebtedness for rent. If it had been alleged that this was done while William J. Hoare held the note, it would then, under our statute, which allows one joint debtor to be released without discharging the other, have clearly shown a valid counterclaim as against William J. Hoare, for the balance of the rent due from him. But this allegation is deficient in not showing

when the release was given. But as a good counter-claim was shown on the agreement, it was unnecessary to rely upon the alleged release.

Although the judgment must be reversed for the error in excluding the evidence offered in support of the counterclaim, it will be proper, as necessary to a final adjustment of the controversy, for us to pass upon another question presented and discussed. The note being payable in Canada currency, and that currency having been at a premium at the time the note fell due, and subsequently fluctuating in amount, at what date should the premium be taken in determining the amount due upon the note? This is a question of considerable interest. There are authorities which would support the position, that where a note payable in the currency of a foreign country is sued on in this, the difference of exchange between the two should not be considered at all in determining the amount of the recovery. *Martin and others v. Franklin*, 4 Johns. 124; *Scofield v. Day*, 20 id. 102; *Adams v. Cordis*, 8 Pick. 260. But the weight of authority seems to be the other way, as appears from the cases cited in Edwards on Bills and Notes, pp. 725 et seq. At all events, this court has adopted the other rule. See *Pfeil v. Higby and another*, 21 Wis. 248.

But conceding that the party in such case should recover exchange, the question still remains, at what date the premium shall be taken in estimating the amount of the recovery. Shall it be the time when the note fell due, or the time of the trial? This may be a very material question, as the facts of this case show. For at the time the note fell due, the premium on Canada currency was thirty-seven per cent., while at the time of the trial it was only about nineteen or twenty.

Perhaps a strict application of logical reasoning to the question would lead to the result that the premium should be estimated at the rate when the note

fell due. That was when the money should have been paid, and when the default in performing the contract occurred. This conclusion would be supported by the analogy derived from the rule of damages on contracts to deliver specific articles, fixing the market price at the time when they ought to have been delivered as the criterion. This rule might sometimes be to the advantage of the holder of the note, as in the present case. In other cases, where the premium was less at the time the note became due than at the time of trial, it would be to his detriment. And in view of these uncertainties and fluctuations in the rate, upon grounds of policy as well as for its tendency to do as complete justice between the parties as is possible, we have come to the conclusion that the true rule in such cases is to give judgment for such an amount as will, at the time of the judgment, purchase the amount due on the note in the funds or currency in which it is payable. To accomplish this, of course, the premium should be estimated at the rate prevailing at the time of trial. By this rule the holder would neither gain nor lose by the fluctuations in the rate, but whenever he obtained a judgment would obtain it for a sum which would then procure him the exact amount to which he was entitled in the proper currency. This does complete justice between the parties and seems, therefore, to indicate the true extent to which the difference of exchange in such cases should affect the amount of recovery.

It appears that on November 9, 1869, a payment was made on the note, of $640 in American money. The amount which ought to have been credited on the note as of that date, was the amount of Canada currency which the $640 American money would have then bought. If the premium at that date was, as testified, thirty-two per cent., the correct amount to be credited would have been ascertained by dividing the $640 by $1.32.

The directions given by the court below, upon this point, as well as upon the date at which the rate of the premium was to be taken in fixing the amount of the judgment, were not in conformity with the rules above indicated, and are therefore erroneous.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.