Lathrop, Receiver, vs. Knapp.

---

LATHROP, Receiver, vs. KNAPP.

CONTRACTS:    *Subscriptions to common object.—Each subscriber bound to the others.—Consideration.—Estoppel.*

I. Per DIXON, C. J.

1. Where several persons subscribe, or promise to contribute, to a common object, the promise of each is a good consideration for that of the others; and this is especially true where the object of the transaction is to promote the private gain or emolument of the promisors.

Lathrop, Receiver, vs. Knapp.

2. After (but not before) some of the promisors have performed their agreement, in whole or in part, an action will lie in their behalf against others who have made default.

3. In such a case each promisor might also be held *estopped* as against the others from denying his obligation to pay, on the ground that such denial would operate as a *fraud* upon them.

4. Such a transaction is in the nature of a copartnership between all the subscribers; and no one of them will be permitted to take an unfair or fraudulent advantage of the others in the business of the copartnership.

5. Defendant signed a paper by which the subscribers agreed to pay certain sums respectively for the purpose of purchasing a certain quantity of lands, to be selected from a certain described body of lands, at specified prices per acre; the conditions of the subscription being declared in said paper to be, that if the lands should prove satisfactory to a committee to be appointed by the subscribers to examine them, the subscription should be binding, but not otherwise.   Many of the other subscribers paid their subscriptions, and the lands were selected by a committee duly appointed; and on subsequent proceedings in equity, in which some of the subscribers were plaintiffs and the others defendants, the present plaintiff was appointed receiver to take possession of the property, choses in action, etc., belonging to the fund, with the usual powers of receivers.   *Held,*

(1.) That said subscription paper was a valid contract on the part of each signer thereof.

(2.) That plaintiff, as such receiver, could maintain an action to recover from defendant the amount unpaid on his subscription.

6. If, by any secret arrangement between defendant and the vendor of said lands, the former was to be released from paying his subscription, and a correspondingly less sum than that stipulated was to be paid, and was in part paid and accepted for the lands, such an arrangement would be a fraud upon the other subscribers, and would be no defense to the action upon defendant's subscription.

II. Per COLE, J.

1. The promises of the several subscribers, when made, were without consideration, and were invalid.

2. Where advances have been made, or expenses and liabilities incurred, by others upon the credit of such a subscription, it becomes binding upon the promisor, although he may not have derived any pecuniary advantage from the enterprise.

3. But as the complaint in this case shows that the other subscribers obtained, without the aid of the sum subscribed by defendant, the exact property which they expected to obtain with its aid, and it does not appear that they will suffer any harm or disadvantage in consequence of his default, or that the same will operate as a fraud upon them, they show no cause of action against him.

APPEAL from the Circuit Court for *Racine* County. The case made by the complaint is as follows:

In May, 1865, a paper was signed by the defendant and by numerous other persons and firms, containing

the following agreement: "We, the undersigned, agree to pay the sums set opposite our respective names, for the purpose of purchasing from Messrs. Goddard, Steers & Co., twenty-five hundred acres of oil land in fee simple, and twenty-five hundred acres of oil lease, in all five thousand acres; the same to be selected from twenty thousand acres of fee and lease interests owned by the said Goddard, Steers and others on the tributaries of the Great Kanawha in West Virginia. The conditions of the subscriptions are such that if the lands shall prove satisfactory to a committee to be appointed by the subscribers to examine them, then this subscription to be binding, but otherwise of no effect. The price to be paid for said lands is $20 per acre for both fee and lease interests, or $100,000 in all." The defendant's subscription was $10,000. When $72,000 had been subscribed, it becoming apparent that the whole amount of $100,000 could not be obtained, the subscribers agreed to close the subscription, and that the sums subscribed should be paid by them respectively into a common fund, which should be invested in the purchase of so much of the lands and leases mentioned in said paper as the fund raised would purchase at the rate of $20 per acre, one-half to be in fee and the other in leasehold interests. Thereupon, during said month of May, 1865, a committee, consisting of the defendant and one other person, was duly appointed by the subscribers to said paper, to examine the lands therein mentioned, and, if they should prove satisfactory to the committee, select therefrom 3,600 acres, one-half in fee and the other half in leasehold interests. The committee performed the duty assigned them, and after selecting the 3,600 acres, made a report of their doings to said subscribers, who confirmed and adopted the report. Subsequently the subscribers duly appointed Jerome I. Case, one of their number, as their agent and trustee to receive the money subscribed,

purchase the lands and pay therefor, and take the title thereto in his own name, but in trust for the subscribers, and Case accepted the trust, and entered upon his duties under it, and collected from most of the subscribers the whole of the sums subscribed by them, and from others considerable proportions thereof in cash, taking their notes for the balance; and from several he collected a portion of the sums subscribed by them without receiving any notes for the balance. The whole amount collected by Case, including the $10,000 subscribed by himself, was $49,170.17. Four of the subscribers, including the defendant, failed to pay any part of their subscriptions, the aggregate of which was $18,500. Afterwards, in July, 1865, Case purchased from Goddard, Steers & Co. the 3,600 acres of land selected by the committee, and took title thereto, as agreed, but did not pay $20 per acre therefor, but purchased them for $39,787.96. While engaged in his duties as such agent and trustee, he paid out $972.21. On the 12th of July, 1865, when his agency and trusteeship ceased, Case had in his hands as such trustee $8,410, the property of said subscribers. On that day he made a report to said subscribers of his doings as such agent and trustee, in which he denied that he had in his hands any balance whatever. Thereupon, in November, 1866, an action was brought in the Racine circuit court, in favor of a large majority of the subscribers, against Case, *Knapp* and certain other subscribers, in which the complaint alleged substantially the facts above stated; the object of which action was to obtain from Case an account of all moneys received by him on said subscriptions, and of the manner in which he had disposed of the same; and to have a receiver appointed of all property and effects belonging to the plaintiffs in said action, and constituting the funds contributed by them as aforesaid, with the usual powers of receivers; and that Case might be adjudged to convey and transfer

to said receiver all lands and leases acquired by him
as such trustee, and all moneys in his hands as such;
that the rights and interests of said subscribers re-
spectively might be ascertained and adjudged, and the
receiver directed to make conveyances and payments
according to their respective interests. Case an-
swered, denying that he purchased the lands for less
than $20 per acre, or that he had in his hands as trus-
tee any sum whatever, or that he had ever received
from the subscribers any greater sum than $39,170.17.
(See *Collins and others v. Case, impleaded, etc.*, 23 Wis.
230.) The only issues made by the pleadings in that
action, and tried by the court, were, what amount of
cash had been paid Case by said subscribers, what
amount he had paid Goddard, Steers & Co. for said
lands, and what amount remained in his hands as trus-
tee. Upon the trial of said action in November, 1867,
the court found the facts substantially as alleged in
the complaint therein; and by its judgment appointed
*William H. Lathrop* (the plaintiff in this action) as re-
ceiver, with the usual powers, to take possession of
and hold in trust for said subscribers "all and singular
the lands, interests in lands, moneys, property, things
in action and effects of whatsoever description," be-
longing to them. The decree also provided, among
other things, that upon Case's conveying to said re-
ceiver said lands, and interests in lands, and assign-
ing to him said subscribers' notes, and paying him the
money adjudged to be due from said Case, the receiver
should divide and distribute such lands and interests
in land, and such moneys and the proceeds of the
notes, among the subscribers, in the proportions which
their several subscriptions bore to the total amount
subscribed. *Mr. Lathrop* thereupon entered upon the
performance of his duties as receiver, and took the re-
quired conveyances, assignments, transfers and pay-
ments from Case; and among other things, came into
possession, as such receiver, of the subscription paper

above mentioned. The defendant never having paid any part of the $10,000 by him subscribed, *Lathrop* brought this action to recover that amount with interest from May 1, 1865.

The complaint further avers: (1.) That by virtue of the facts above stated, the defendant became and is liable to pay into the fund of said subscribers the amount of his said subscription of $10,000, with interest from May 1, 1865, but has never paid the same or any part thereof. (2.) That under the aforesaid judgment in *Collins et al. v. Case et al.*, "the defendant *Knapp* is entitled to a share of the said lands and interests in lands, of the proceeds of said notes when collected, and of the moneys so as aforesaid held by this plaintiff in trust for all of said subscribers; that he is entitled to such a proportion thereof as his said subscription of $10,000 bears to the whole of said subscription; and that said defendant claims and demands such share and proportion." (3.) That on the 12th of March, 1869, upon petition duly made by the plaintiff as such receiver, he was, by an order duly made and signed by the judge of said circuit court, authorized and empowered to bring this action.

The defendant demurred to the complaint on the grounds, first, that plaintiff had no legal capacity to sue; and secondly, that no cause of action was stated; and he appealed from an order overruling his demurrer.

*Paine & Millett*, for appellant, argued, 1. That the plaintiff had no legal capacity to sue. The defendant's subscription was not assigned to him, and there was no legal privity between them. As receiver he had no powers but such as were conferred upon him by the order for his appointment; and the bringing of a suit upon this subscription was not germane to his appointment. Again, while in New York they have a special statute (Laws of N. Y. 1845) authorizing receivers appointed by the court of chancery to bring actions in their own name "for any debt, claim or

demand transferred to them," we have no such statute here; and the inference is, that a receiver in this state cannot sue in his own name except on negotiable paper transferable by delivery, or upon claims lawfully assigned, his powers by our statute being special, and not general. Again, this receiver represents not Goddard, Steers & Co., for they have no interest in the matter, but the subscribers; and could they bring an action at law against their co-subscribers? Must they not adjust their differences in equity? 2. In every contract there must be a promise, and the complaint should show to whom the promise sued upon was made. Lawes on Pl. 93–95; 1 Chitty's Pl. *331. Neither the complaint nor the subscription paper here shows that the defendant's promise was made to any one. 3. There is no consideration to support this promise; it is mere *nudum pactum.* A contract must be binding upon both parties, *at the time it is executed,* or it is binding on neither. *Hamilton College v. Steward,* 2 Denio, 403; *Same Case,* 1 Coms. 581; *Utica & Sch. R. R. Co. v. Brinkerhoff,* 21 Wend. 141; *Livingstone v. Rogers,* 1 Caines' R. 534; *Limerick Academy v. Davis,* 11 Mass. 114; *Bridgewater Academy v. Gibbert,* 2 Pick. 578; 4 Johns. 235; *Keep v. Goodrich,* id. 397; *Ford v. Adams,* 2 Barb. 348; *Geer v. Archer,* id. 423; Chitty on Con. 27; *Bean v. Burbeck,* 4 Shep. 458.

*Frederic Ullman,* for respondent:

1. A receiver is a "trustee of an express trust," and as such has the capacity to bring all necessary and proper suits for the benefit of his trust funds and estate (*Vanderpool v. Van Valkenburgh,* 2 Seld. 190; *Green v. Winter,* 1 Johns. Ch. 60); and this he may do under the statute without joining the person for whose benefit the action is prosecuted. R. S. ch. 122, sec. 14; 2 Wait's Law & Pr. 271; 1 Till. & Shear. Pr. 485; 1 Van Santv. Eq. Pr. 85, 378; 12 How. Pr. R. 287; *Palmer v. Johnson,* 46 Barb. 21–24; *Person v. Warren,* 14 id. 488; *Gardinier v. Kellogg,* 14 Wis. 605;

*Jones v. Costigan*, 12 id. 677. By the judgment in the
action of *Collins et al. v. Case*, the present plaintiff was
appointed a receiver of the court "with the usual
powers of a receiver, for the purpose of taking pos-
session of, and holding *in trust for said subscribers*, all
and singular the lands, interests in lands, moneys,
property, things in action and effects of whatsoever
description, belonging to the said subscribers to said
contract or subscription." Under this language the
original contract came properly into his hands as
receiver, and he was subsequently authorized by an
order of court to bring this action. He has, therefore,
the legal capacity to sue. Again, whatever rights
Case had, as agent and trustee of the whole body of
subscribers, to collect these subscriptions, has passed
to the plaintiff under the judgment. Again, being an
officer of the court, and the custodian and trustee of
the fund, he must, under the direction of the court,
gather the fund together, and distribute it to those
entitled to it. *Cross v. Pinkneyville Mill Co.*, 16 Ill. 54;
*Meller v. Ballard*, 46 id. 377. 3. The subscription in
this case, being for a purpose connected with trade,
constituted a valid contract. *Eyclesheimer v. Antwerp*,
13 Wis. 546, and cases there cited; 3 Scam. 198; 25
Ill. 292; 26 id. 41.

DIXON, C. J. The question in this case is, whether
the writing subscribed by the defendant and others is
a contract, or whether it is to be regarded in law as a
mere piece of blank paper. It purports on its face
to be a contract or agreement between the several
persons whose names are subscribed thereto, and to
contain a promise on the part of each one of those
persons to pay in the sum set opposite his name for
the purpose of accomplishing the object therein desig-
nated. It is clear and unambiguous in its terms, and
no doubt can be entertained as to the meaning and
intention of the parties to it. They intended it as a

valid and binding agreement—one which should truly represent the rights and liabilities of the subscribers both individually and collectively. Each received the signature of every other as constituting a valid agreement or promise to pay, and gave his own signature as an equally valid promise in return. That such was the nature of the transaction is apparent from the paper itself—as apparent as if it had been written out in words; and the question is, shall the agreement fail for want of a consideration? I say, clearly not. In my judgment it is emphatically one of those cases in which it has been held, and rightly held, where several promise to contribute to a common object, that the promise of each is a good consideration for the promise of the others. It seems to me clear beyond doubt that such was the consideration, or one of the considerations, upon which each subscriber put down his name, and that the same is plainly to be inferred from the terms and obvious import of the paper. The case is in all respects like that of *George v. Harris*, 4 N. H. 533, except that here the scheme or enterprise was of a private character, which does not vary the principle, but makes it, if anything, the more clear and conclusive. There is in this case the additional consideration of private gain or advantage, which does not exist in merely public religious or benevolent enterprises.

The facts of that case, as well as the principle upon which it was decided, will sufficiently appear from a part of the opinion, which is as follows: "There were twenty-nine persons, who were desirous that the courts should continue to be holden in Plymouth, and were willing to contribute certain sums towards the erection of a court-house, that they might continue to be holden there. A written agreement was made that each of the twenty-nine persons should pay to an individual a particular sum; that so much of the whole sum as should be necessary, should be expended

in the erection of a court-house; and that the residue, if any, should be returned to the subscribers respectively. There was a direct promise by each to pay, and a sufficient consideration is apparent from the nature of the transaction. The consideration upon which the promise of each is founded, is the promise of the rest to contribute to an object which all were desirous to accomplish." And this I think to be the sound and correct principle upon which all such contracts depend, and one that is well sustained by authority. "It is not denied," says MANNING, J., speaking of a similar subscription, in *Underwood v. Waldron*, 12 Mich. 92, "that here is a promise, but it is said that the plaintiff in error is not bound by it, because there was no consideration for it. What is a consideration? The price paid or agreed to be paid for the promise, that is, the thing done or agreed to be done, is the consideration. Hence mutual promises are a good consideration for each other; as where A. promises B. to do a certain thing in consideration that B. promises A. to do a certain other thing." That was a subscription in aid of a college, and the opinion proceeds: "The benefit to the college is the inducement to, and not the consideration of the promise, which is the subscription of the paper by others. Each subscriber promises to pay to the persons named in the subscription for the purpose therein mentioned, the sum set opposite his name, in consideration of a like promise by every other subscriber. This is clearly implied in the subscription itself. It is the understanding of every person who puts his name to a subscription paper; and where the object is conducive to the public weal, as in the case before us, it seems to me it would be a strange perversion of legal principles to refuse to enforce the subscription on a plea of want of consideration." And in a like case, *Stewart v. The Trustees of Hamilton College*, 2 Denio, 416, Chancellor WAL-WORTH says: "Neither is there any difficulty in my

mind in finding a good and sufficient consideration to support a subscription of this kind, made by several individuals. Every member of society has an interest in supporting the institutions of religion, and of learning in the community where he resides, and when he consents to become a subscriber with others to raise a fund for that purpose, the real consideration for his promise is the promise which others have already made, or which he expects them to make, to contribute to the same object. In other words, the mutual promises of the several subscribers to contribute towards the fund to be raised for the specific object in which all feel an interest, is the real consideration for the promise to each. For this purpose, also, the various subscriptions to the same paper and for the same object, although in fact made at different times, may in legal contemplation be considered as having been made simultaneously. The consideration of the promise, therefore, is not any consideration of benefit received by each subscriber from the religious or literary corporation to which the amount of his subscription is made payable, nor is his promise founded upon any consideration of injury which the payee has sustained or is to sustain, or be put to, for his benefit. But the consideration of the promise of each subscriber is the corresponding promise which is made by the other subscribers. Mutual promises have always been held sufficient as between the parties to sustain the promise of each." See opinion of PORTER, senator, pp. 423–5. And see also the opinion of this court in *Hawes v. Woolcock*, 26 Wis. 629, where the same doctrine was fully sustained. It was there held that mere mutual promises, without any other or further consideration, were valid and sufficient between the parties. Having first spoken of another consideration, which he says was sufficient, Mr. Justice PAINE proceeds: "But without this, the promise of each was a good consideration for the promise of the

other.   Neither party could have enforced such a set-off without such an agreement.   The promise of Hawes on the one part to apply his individual claim in payment of the joint debt of himself and brother, and the promise of the defendant on the other part to receive it as such payment, were each a good consideration for the other, and sufficient to uphold it as an agreement."

This principle, which governs in case of a subscription for a public object, I think equally applicable to a subscription where the object is private, and where the consideration is strengthened by the benefit received or to be received by each subscriber.   It has been sustained by the following, in addition to the cases above cited: *Trustees v. Stetson*, 5 Pick. 506; *Watkins v. Eames*, 9 Cush. 537; *Congregational Society v. Perry*, 6 N. H. 164; *Amherst Academy v. Cowls*, 6 Pick. 427; *Patchin v. Swift*, 21 Vt. 292; *Troy Academy v. Nelson*, 24 Vt. 189.   This last is a particularly valuable and interesting case upon the subject, where it is said the doctrine of estoppel is applicable, because of the fraud upon the other subscribers if one is allowed to repudiate.

And it is upon the very same and no other or different principle, that agreements for a composition between a debtor and two or more of his creditors have been upheld; and the numerous cases adjudging these valid are so many authorities directly sustaining the validity of the agreement here.   An agreement by a single creditor with his debtor, for no other consideration than the payment of part of an admitted debt, to accept such part in satisfaction of the whole, is void for want of consideration.   *Otto v. Klauber*, 23 Wis. 471; *Perkins v. Lockwood*, 100 Mass. 249.   But such an agreement entered into by two or more creditors with the same debtor, by which they agree to accept less than the sums due them respectively, is valid by reason of the mutual promises of the creditors;

Wis. xxvii—29

and, whether executed or executory on the part of the debtor, he may avail himself of it in defense of an action brought against him by one of the creditors to recover the residue of the debt. *Eaton v. Lincoln*, 13 Mass. 424; *Steinman v. Magnus*, 11 East, 390; *Good v. Cheesman*, 2 B. & Ad. 328 [22 E. C. L. 897]; *Boyd v. Hind*, 1 H. & N. 938. These decisions go upon the distinct ground that it is the several promises of the subscribing creditors, made to the debtor, and the relation thus created between the creditors, which constitute the consideration for the promise of each, and upon which the agreement must be sustained. They recognize this as the sole consideration, and that otherwise the agreement would be void; for in the case last cited the court say: "But no such agreement can operate as a defense, if made merely between the debtor and a single creditor; the other creditors, or some of them, must also join in the agreement with the debtor and with each other, for otherwise it would be a bare contract to accept a less sum in satisfaction of a greater, which would be invalid by reason of want of consideration for relinquishing the residue."

Such being the true and only consideration for agreements between creditors, it follows that if sufficient in agreements of that kind, then it must be in agreements like the present; for the nature of the promises is precisely the same in both classes. "The reason is," say the court in 100 Mass. 250, "that the rights and interests of other parties become involved in the arrangement, and this affords a new and legal consideration for the promise. It would be contrary to good faith for a creditor who has secured the advantage of such an arrangement to disregard its obligations by proceeding to enforce the balance of his demand; and the debtor is entitled to avail himself of this consideration in defense." And in *Good v. Cheesman*, Lord TENTERDEN, C. J., says: "Then is not this a case where each creditor is bound in consequence of

the agreement of the rest? It appears to me that it is so, and both on principle and on authority of the cases in which it has been held that a creditor shall not bring an action *where others have been induced to join in a composition with the debtor; each party giving the rest reason to believe that in consequence of such engagement his demand will not be enforced.* This is in fact a new agreement, substituted for the original contract with the debtor; *the consideration to each creditor being the engagement of the others not to press their individual claims."* And much the same are the observations of Lord ELLENBOROUGH, C. J., in 11 East, 393. His lordship says: "It is true that if a creditor simply agree to accept less from his debtor than his just demand, that will not bind him; but if, upon the faith of such an agreement, * * * other creditors *have been lured into* relinquishing their further demands on the ground that the party will be thereby discharged of the remainder of his debts, that makes all the difference in the case, and the agreement will be binding." These cases more than hint that *estoppel*, as well as the sufficiency of consideration afforded by the mutual promises, also constitutes a ground upon which such agreement should be sustained.

And should it be suggested that the purchase of the oil land and oil leasehold *nominally* for the price per acre contemplated, or expected to be paid by the subscribers at the time of subscription, or the obtaining of equal quantity of land and leasehold, though at a greatly reduced price, satisfied the agreement between the parties, and was a full consideration or equivalent to each subscriber who paid his subscription, so that some of the subscribers might pay in full and others pay nothing, and yet all share equally in the land and leasehold, or become jointly interested, or part owners in proportion to the sums respectively subscribed and agreed to be paid by each, whether actually so paid or not, this, I answer, would be a gross fraud upon the

paying subscribers, and would constitute no defense at law or in equity to an action upon the subscription. The transaction was in the nature of a co-partnership between all the subscribers, and a fiduciary relation existed, by reason of which no one of them could take unfair or fraudulent advantage of any of the others in the affairs or business for which the association was formed, and in which all had a common or mutual interest.    The relations of agency and of mutual trust and confidence existing between partners are of course well understood; and each subscriber, or, as I may say, partner here, was, upon the most obvious principles of law and justice, prohibited from enriching himself, by any secret management or device, at the expense of his fellow subscribers, in any matter or negotiation connected with or intended to promote their common interests, or to carry out the common purposes for which they were associated.    No one subscriber could, by any secret management or device, obtain a share of the land equivalent to the amount of his subscription at the expense of the other subscribers. He could not by such management compel the other subscribers to pay for his share, and then come in as a part owner, or for a division with them, himself paying nothing.    The fraud and injustice of this would be manifest, and the law would not tolerate it.    These principles would seem to be elementary, and to require no citation of authority in their support.    They are principles of natural equity and justice which, it would seem, ought at once to be received, without examination or discussion, by every unprejudiced mind.    If, by possibility, the obtaining of the whole land for one-half of the price originally contemplated could be regarded as consideration in full to one-half of the subscribers in amount, who paid their subscriptions in full, so that the other subscribers need pay nothing, and yet receive and retain one-half the land, then the decision in the case of *Collins v. Case*, 23 Wis. 230,

which arose upon this same subscription paper, was clearly wrong, for the reason that the other subscribers there, who are the same persons complaining through the receiver here, who was appointed in that action, lost nothing by the non-payment of Mr. Case's subscription, which was the only matter there in controversy. See pages 242, 243. They had the land, or their shares in it, according to the price originally estimated, and therefore had no ground of complaint because Mr. Case had not paid his subscription. I think that decision is conclusive against this theory.

I am aware that the case of *Trustees of Hamilton College v. Stewart*, 1 Comstock, 581, is in conflict with the principle here asserted. That case is cited and relied upon here, but I am not satisfied with the decision, and not disposed to follow it. It stands alone, or nearly so, and I think the authorities above cited, which constitute by far the greatest weight, lay down the sounder and better rule, and that which is more in harmony with reason and justice. But more, than this, the subscription there was to a public object—to the funds of the college, in which every member of the community had the same interest as the subscribers, and the reasoning of the court proceeds altogether upon the nature of such a subscription, and is wholly inapplicable to a subscription like the present. It may be conceded that the court there was right, and still it does not affect this subscription. The reasons for holding the agreement there void do not exist here. This is a private business or commercial agreement, and, as I have already said, not distinguishable at all from agreements between creditors. No case has been found, nor I believe can be, where such an agreement has been held void, for want of consideration or otherwise. It is the policy of the law that there should be the utmost liberty in all matters of contract so long as the engagement transcends no positive rule of law or of morality.

If the affairs of men or wants of community make it expedient that parties should enter into contracts of this kind, I can perceive no reason why they should not be upheld. It seems to me that the dictates of sound policy require that they should be upheld, unless there be most clear and insuperable reasons to the contrary. I can see no such reasons, and I do not believe it is the duty or the right of any court to set aside a contract fairly made upon any slight or doubtful grounds. If there is to be any strained construction in such cases, it should be for the sake of sustaining and not of destroying the contract. I will not search, therefore, for technical reasons upon which to overturn and annul this contract. It is enough for me that there are obvious and well-considered grounds upon which it may be sustained, and that the ends of justice between the parties require that it should be sustained.

It is for these reasons that I think the promise of the defendant was not without a good consideration, and that upon the assembling of the subscribers, and their agreement to invest the sums already subscribed as alleged in the complaint, it became fully operative and obligatory. But the complaint further shows that, very soon after, nearly all the other subscribers paid in their shares and purchased the lands, of which the defendant claims his proportion, and has had the same adjudged to him. This advancement of money by the other subscribers, and purchase of the lands, did, within all the authorities, operate to bind the defendant, if he was not bound before. I think he was bound before, though perhaps no action could be maintained, or rather no damages recovered, until some one or more of the subscribers had paid in their money. It seems to be of the nature of the contract, that there can be no recovery upon it until it has been in part executed. Payment by some of the subscribers is necessary in order to entitle them to sue

others for a breach.   It is the case of mutual dependent promises, where payment or performance on the one side is a condition precedent to the right of enforcing payment or performance on the other.   In this case the contract has been performed on the part of most of the subscribers, and a cause of action exists against such as have refused to perform.

Judge METCALF, in his Law of Contracts, p. 185, collects many authorities, and sums them up by saying that, "though there is not a uniformity in the decisions on the question whether there is a sufficient legal consideration of such promises, yet thus much is now *the generally adopted doctrine*, namely, that where *something has been done, or some liability or duty assumed, in reliance upon the subscription, in order to carry out the object, the promises are binding, and may be enforced, although no pecuniary advantage is to result to the promisors.*"   Besides several of the authorities above referred to, he cites the following: *McDonald v. Gray*, 11 Iowa, 508; *Commissioners, etc., v. Perry*, 5 Ohio, 59; *Peirce v. Ruley*, 5 Ind. 69; *Johnston v. Wabash College*, 2 Ind. 555; *Robertson v. March*, 3 Scam. 198; *M'Auley v. Billinger*, 20 Johns. 89; *Reformed Protestant Dutch Church v. Brown*, 29 Barb. 335; *Farmington Academy v. Allen*, 14 Mass. 172; *Bryant v. Goodnow*, 5 Pick. 228; *Ives v. Sterling*, 6 Met. 310, 318; and *Mirick v. French*, 2 Gray, 420.

Having thus determined that there was no lack of consideration for the promise, the next question to be considered is, whether it must fail for want of a promisee or person to accept and enforce it.   It is insisted that the promise was made to no person, and therefore is void.   If I am correct in the above conclusions, it follows that this objection is without foundation.   It is a promise on the part of one subscriber to all the others, and an action may be maintained in the name of the others to enforce it.   And such, I have no doubt, is the law.   And here the case of *George v. Harris*, 4 N. H. 533, is again in point.   The

promise there was in form to one Livermore, but the action was brought in the names of all the other subscribers, except one who was deceased, against the subscriber, who refused to pay. It was held that the action was properly brought, and that the promise was a promise by that one subscriber to all the others. I cannot doubt the correctness of the decision. I think that the same is true of the defendant's promise here. The other subscribers might have maintained an action against him upon it; and as they might, so I think this receiver may. In the present condition of the equity suit between the parties, I think the receiver is the proper person to sue upon the promise.

I am of opinion that the order overruling the demurrer to the complaint should be affirmed.

COLE, J. It appears to me that the complaint in this case does not state facts sufficient to constitute a cause of action.

I shall not stop to inquire whether the plaintiff has the legal capacity to bring the action on the subscription paper. The proceedings in the case of *Collins et al. v. Case et al.*, are set forth in the complaint for the purpose of showing that the plaintiff was appointed a receiver in that action, and that the original contract, containing the subscription of the defendant, had, with other property, been transferred to him. But it seems to me that there are other obvious and insuperable difficulties in the way of maintaining the action.

The subscription paper sued upon, and the allegations of the complaint, are set forth in the foregoing statement of the case. It will at once be observed that there is no promisee named in this subscription paper; that Goddard, Steers & Co. are not a party to it; and there is no engagement whatever upon the part of any one to do or to forbear to do anything as a consideration for the promise of the defendant. "The general principle is recog-

nized in every case," says Judge ALLEN, in *Barnes v. Perine,* 12 N. Y. 18–24, "that all simple contracts executory, whether in writing or verbal, must be founded upon a good consideration, and that the want of a legally adequate consideration, that is, a consideration recognized as sufficient in law, will vitiate every executory contract not under seal." The learned judge observes further in the same case, that "a consideration for an undertaking may consist in a benefit or advantage to the promisor, or any obligation, harm, inconvenience or disadvantage incurred by the promisee upon the faith of the promise; and, in the absence of fraud or other undue influence, the validity of the promise does not ordinarily depend upon the amount or value of the consideration as an equivalent for the thing promised."

I have quoted these remarks, not on account of any novelty in the legal propositions laid down—for indeed they are elementary—but partly because of the high character for learning and ability of the court which sanctioned them, and more especially for the reason that they were made in an action brought upon a subscription paper, where the court had occasion to consider questions quite analogous to those arising on this demurrer. And, keeping in view these very plain and obvious legal principles, let us inquire, What was the consideration for the defendant's undertaking? It is said that the promise of the co-subscribers to the paper was a sufficient consideration for it; in other words, that the promise of each was a good consideration for the promise of the others. They promised to pay the sums set opposite their respective names, for the purpose of purchasing thirty-six hundred acres of oil lands. Now it appears from the complaint that this object has been accomplished. The lands have been purchased; the plaintiffs—or the subscribers whom the receiver represents—have paid no more money than they expected to pay, and they have the

Wis. xxvii—30

precise interest in the property they expected to have when they signed the subscription paper. They have not expended anything; have incurred no obligation upon the faith of being reimbursed by the subscription of the defendant. They have paid their subscriptions, and have got the property. They will therefore suffer no harm, inconvenience or disadvantage in consequence of the default of the defendant. There is no ground for holding that the plaintiffs, relying upon the subscription of the defendant, have made advances or contracted engagements which will be less useful or more burdensome to them if he does not pay. For they have purchased property for less than forty thousand dollars, for which they were willing to pay over seventy thousand dollars according to the conditions of the subscription. Suppose they had paid the amount of their subscriptions "into the common fund," or into the hands of their agent, Jerome I. Case, but did not choose to go any further with the speculation. In that event, could they have maintained an action to compel the defendant to pay the amount of his subscription into the same common fund? It seems to me no action of the kind could be maintained. And I cannot now perceive how the plaintiffs are in any better position to sue for and recover that subscription, when it appears that they have expended nothing upon the faith of it, and have got the property which was the real and sole inducement for their own subscriptions.

I think, in principle, the case comes fully within the doctrine of *The Trustees of Hamilton College v. Stewart*, 1 N. Y. 581; *Phillips' Limerick Academy v. Davis*, 11 Mass. 114; *Boutell v. Cowdin*, 9 id. 254; *Trustees of Bridgewater Academy v. Gilbert*, 2 Pick. 579, and cases of that character. It is true, it is alleged in the complaint that by the judgment in the action of *Collins et al. v. Case et al.*, the defendant is entitled to a share of the oil lands, and of the proceeds of certain notes

when collected, " and that he is entitled to such a proportion thereof as his said subscription of ten thousand dollars bears to the whole amount of said subscriptions, and that said defendant claims and demands such share and proportion." Now, assuming that it was some advantage to the defendant to have his share or interest in the property, we cannot from that fact alone imply an obligation on his part to pay the amount of his subscription. Suppose, by some arrangement between him and Goddard, Steers & Co., they saw fit to treat that subscription as already paid: is that a matter about which the other subscribers can inquire, so long as it appears that they have made no advances, nor contracted any obligation, on the faith of it? The allegation, however, in respect to his share or interest having been adjudged the defendant, is not sufficient to create a liability, because it does not appear that this judgment was rendered on the assumption that the defendant was liable on his subscription. Besides, this action is not brought upon this judgment, but upon the original subscription paper. All that is stated in the complaint about the proceedings in the case of *Collins v. Case*, is not to found a liability upon the judgment there rendered, but to show title to the subscription paper in the plaintiff, and his right to maintain an action upon it. So that if the original promise was not binding, for want of a sufficient consideration to support it, and the plaintiffs have made no advances, nor incurred any obligation upon the faith of that subscription, I cannot conceive upon what principle the defendant is to be charged. I concede that the doctrine is well established, that where such advances have been made, or expenses and liabilities incurred by others, upon the credit of such a subscription, before any notice of a withdrawal, then it becomes obligatory and binding upon the promisor, although he may not have derived any pecuniary advantage from the enterprise. The following author-

ities recognize this as the ground of liability : 13 Wis. 546; 14 Mass. 172; 6 Pick. 427; 6 Met. 310; 2 Gray, 420; 4 N. H. 533; 11 Iowa, 508; 5 Porter (Ind.) 69; 29 Barb. 335; 36 id. 576; 12 N. Y. 18; 3 Scammon, 198; 12 Mich. 73; 24 Vermont, 189; 1 Parsons on Con. (5th edition) 453; 1 Story on Con. § 453; Metcalf on Con. 185. "Further than this," says Prof. PARSONS, in the work above cited, "it is not easy to go, unless such subscriptions are held to be binding merely on grounds of public policy. To say that they are obligatory because they are all promisees, and the promise of each subscriber is a valid consideration for the promise of every other, seems to be reasoning in a vicious circle. The very question is, are the promises binding; for if not, then they are no consideration for each other. To say that they are binding because they are such considerations, is only to say that they are binding because they are binding; it assumes the very thing in question." The promise of each subscriber is sometimes said to be a sufficient consideration for the promise of others ; but this quotation from a work of acknowledged authority shows that this view of the ground of liability is quite unsatisfactory. Chancellor WALWORTH, in the case of *Stewart v. The Trustees of Hamilton College*, 2 Denio, 403–416, says that "the mutual promises of the several subscribers to contribute towards the fund to be raised for the specified object in which all feel an interest, is the real consideration of the promise of each." It is obvious that this remark of the chancellor was *obiter*, since he held that there was an important condition in that case, upon which the promise of the defendant was made, and which had not been complied with, and therefore he never became liable upon his subscription. But that the promise of each subscriber constituted a good and sufficient consideration to support the promise of the other subscribers, was a position not sustained by the court of errors; nor by the court of

appeals when the case came before the latter court in 1 N. Y. 581.　On the contrary, Judge GARDINER opens his opinion with the observation, that "this is not a case of mutual promises, where the undertaking of one party is the consideration for the promise of the other" (p. 582).　And Judge JOHNSON, in *Barnes v. Perine, supra,* referring to this view of the matter, remarks: "Nor, since the case of *Hamilton College v. Stewart* (1 Coms. 581), are we at liberty to consider whether the ground taken by the chancellor in the same case (in 2 Denio, 403), that the promise of one subscriber might serve as a consideration to sustain the promise of another, was good law; for the judgment given by this court in that case could not have been rendered without determining that ground to be unsatisfactory" (p. 30).　So in this case I am unable to find any sufficient consideration expressed in the subscription paper to sustain the undertaking of the defendant; nor can any consideration be implied from the matters set forth in the complaint.　The plaintiffs have sustained no injury, nor made any advances upon the faith of this undertaking.

It is said upon the brief of the counsel for the plaintiff, that the contract sued on is strictly of a business or trading character, having no analogy to a subscription for a religious or charitable purpose.　But this view does not overcome the difficulty of a want of a consideration to sustain the promise of the defendant. The subscription became valid and binding upon each and every subscriber thereto when made, or it did not become obligatory at all.　And in order to be binding, it was essential that the promise should be founded upon a sufficient legal consideration.　If the subscription was invalid when executed, it remains so still; for nothing was subsequently done by the plaintiffs which made it binding upon the defendant.

It is suggested that this case is strictly analogous to a mutual agreement between creditors to accept the

payment of a part of their claims, and release the common debtor, which agreement is held binding upon the creditors. I think, however, the analogy fails. If, on the faith of a creditor's agreement to accept a part of his debt in full satisfaction, other creditors are induced to relinquish their demands on the debtor, the creditor is not permitted to recover the balance of his debtor; because to do so would be a *fraud* upon the other creditors. That is the ground upon which those cases rest. But how can such a principle apply here, when it appears that the plaintiffs have paid no more than they intended to when they made their subscriptions—have obtained the precise property which was the inducement for their subscription—and have made no advances nor contracted any liability upon the faith of the defendant's promise? I can perceive no ground for saying that the subscription should be held obligatory upon the defendant in order to avoid a fraud upon the plaintiffs.

For these reasons I think the demurrer to the complaint should have been sustained.

PAINE, J., took no part in the decision of this cause.

Upon a division of opinion between the other two members of the court, the order of the circuit court was affirmed.